## COHN et al. v. ERHARDT.

### (Circuit Court, S. D. New York. December, 1890.)

CUSTOMS DUTIES—CLASSIFICATION—JAPANNED WARE.
  Hooks and eyes manufactured of iron, and coated with a hard, brilliant, black varnish, known as "japan," are dutiable as "japanned ware," under Schedule N of the Tariff Act of March 3, 1883, and not as "manufactures of iron," under Schedule C of that act.

At Law.

Action to recover back customs duties alleged to have been illegally exacted by the defendant, collector of the port of New York. The merchandise involved in the present suit was imported by the plaintiffs from Europe in April and June, 1889, and was classified for duty by the defendant, collector, as "manufactures of iron," under Schedule C (Heyl, new, paragraph 216) of the Tariff Act of March 3, 1883, as follows: "216. Manufactures, articles, or wares not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, copper, lead, nickel, pewter, tin, zinc, gold, silver, platinum, or any other metal, and whether partly or wholly manufactured, forty-five per centum *ad valorem*." Against this classification the plaintiffs duly protested, claiming that the goods were dutiable under the provision of Schedule N (Heyl,

new, paragraph 457) of said tariff act as "japanned ware of all kinds, not specially enumerated or provided for in this act, forty per centum *ad valorem*." Upon appeal by the importers to the secretary of the treasury the latter official affirmed the decision of the collector. The uncontratradicted evidence produced by the plaintiffs upon the trial proved that the articles in question were hooks and eyes, manufactured of iron; that they had been coated with a black varnish, known as "Japan," composed of asphaltum, linseed oil, and turpentine, and baked in an oven at a temperature of from 250 to 300 degrees of heat; that this process was known in the trade as "japanning," and that plaintiffs' hooks and eyes were in fact "japanned." The defendant introduced the evidence of witnesses from the "notions" and commission trade dealing in like hooks and eyes, and proved that such trade did not deal in "japanned ware," and did not know the term; that plaintiffs' articles were bought and sold as hooks and eyes, japanned hooks and eyes, or black hooks and eyes. The defendant also produced the evidence of extensive manufacturers of "japanned ware," who testified that what was known in their trade as "japanned ware" consisted of a great variety of articles used almost entirely in house furnishing, such as tea-trays, toilet-sets, dust-pans, cash and tea boxes, bread and cake boxes, umbrella stands, tumbler drainers, pails of various sizes and descriptions, wash-stands, cuspidors, winecoolers, tea caddies, dressing-cases, coal-hods, shovels, and tongs, crumbpans and brushes, and numerous others; and that these witnesses did not peal in goods like plaintiffs' samples at the time of the passage of the tariff act of 1883. On cross-examination these witnesses admitted that there were numerous other articles of various kinds which were japanned, and which were not included in their list of "japanned ware." At the close of the testimony, plaintiffs' counsel moved the court to direct a verdict for the plaintiffs on the ground that the goods were, according to uncontradicted testimony, japanned, and that the words used by congress in the statute were not used in a commercial, but in a descriptive, sense, and that, consequently, the articles were dutiable under the tariff act as "japanned ware of all kinds." The counsel for the defendant moved the court to direct a verdict for the defendant, contending that plaintiffs' importations were never known in trade as "japanned ware;" that this term had a distinct commercial meaning in trade and in commerce at the time of the passage of the tariff act, and that such commercial meaning covered only the class of goods enumerated as "japanned ware" by defendant's witnesses, and known as such in the trade dealing in "japanned ware;" that congress must be presumed to have legislated with reference to such trade meaning of the words "japanned ware;" and that such trade meaning must be adopted in construing the tariff act. Also that the provision in paragraph 216, "manufactures of iron," etc., was more specific than the provision of paragraph 457, for "japanned ware," since the testimony showed that certain wooden articles were sometimes japanned.

*Charles Curie* and *Wm. Wickham Smith*, for plaintiffs.

*Edward Mitchell*, U. S. Atty., and *James T. Van Rensselaer*, Asst. U. S. Atty., for defendant.

LACOMBE, Circuit Judge. The articles here enumerated are indisputably "japanned." As such they are within the phrase "japanned ware of all kinds" in the tariff act. To take them out of that clause, trade testimony is all that is relied upon. The extreme extent to which such testimony goes in this case is this: that in a branch of trade which deals in a very large number of articles, those articles which it deals in and which are japanned are called "japanned ware" to distinguish them apparently from the articles in which that trade deals which are not japanned. It appears, however, by the testimony of the same witnesses that there are a very great many other goods which are japanned in which they do not deal. What the particular trade that deals in those other goods calls them does not appear; but that they are "japanned ware," within the ordinary meaning of the term, is plain. It seems, then, that the trade testimony is not sufficient to show that, in the general trade and commerce of this country, the words "japanned ware" have received such an exclusive and peculiar trade meaning that they cover only the articles of tin-ware, or what not, that the witnesses here have told us that they dealt in, and do not cover the other articles of metal, of wood, etc., which, it appears, are dealt in in trade, and are japanned, and which are, in the ordinary use of the English language, very plainly covered by the phraseology "japanned ware of all kinds." For that reason I deny the motion of the defendant, and direct a verdict for the plaintiffs.