## NEVIN *v.* UNITED STATES (No. 1408).[1]

1. BOTTLE CAPS OF METAL.

"Bottle caps of metal" in paragraph 196, tariff act of 1909, is not to be deemed a term of exclusion forbidding classification by similitude thereunder.—Strauss & Co. *v.* United States (2 Ct. Cust. Appls., 203; T. D. 31946).

2. BOARD'S FINDING OF FACT ON REVIEW.

The board's conclusion here was a finding of fact, and such a finding will not be reviewed here unless the finding is wholly without evidence to support it or is clearly contrary to the weight of evidence.

3. IBID.

The uncontradicted testimony shows the especial design and use of the cap of the importation is to form an air-tight and air-sealed cap, whether for bottles or tubes, but metal caps do not adhere and do not effect a like purpose. These caps were not dutiable by similitude as metal caps.

## United States Court of Customs Appeals, November 18, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7554 (T. D. 34375).

[Reversed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellant.

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

These importations consist of so-called viscose caps. They were returned by the appraiser at the port of New York as "bottle caps composed of viscose" and assessed for duty by the collector by similitude to "bottle caps of metal" under the provisions of paragraph 196, tariff act of 1909, reading as follows:

196. Bottle caps of metal, if not colored, waxed, lacquered, enameled, lithographed, or embossed in color, one-half of one cent per pound and forty-five per centum ad valorem; if colored, waxed, lacquered, enameled, lithographed, or embossed in color, fifty-five per centum ad valorem.

And paragraph 481, as follows:

481. That each and every imported article, not enumerated in this section, which is similar, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this section as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

They are claimed by appellants to be dutiable as nonenumerated manufactured articles under paragraph 480 of the same act. On appeal counsel for the importer at oral argument urged that the express language of paragraph 196, "bottle caps of metal," was such a term of limitation as *ex vi termini* excluded classification by simili-

[1] Reported in T. D. 34945 (27 Treas. Dec., 542).

tude thereunder of all articles not within its literal terms. This court, however, in Strauss & Co. v. United States (2 Ct. Cust. Appls., 203; T. D. 31946), laid down the rule that such exclusion would not be assumed or implied from mere descriptive or *eo nomine* language of a paragraph, but there must be express language of exclusion or of condition tantamount to the same. See also Fensterer & Ruhe v. United States (1 Ct. Cust. Appls., 93; T. D. 31110, at page 96 *et seq.*). These cases rule that issue here. The language of this paragraph is merely *eo nomine*, followed by expressed alternative conditions with one of which at least these importations are susceptible of compliance.

The Board of General Appraisers rested their decision upon similitude of use. They stated:

Now, as said paragraph 196 specifically provides for "bottle caps of metal," and as the caps or capsules here in controversy are composed of viscose, it is at once apparent that, at least so far as material, quality, or texture is concerned, there exists no similarity whatever between the two articles.

Therefore the collector's classification and assessment of the merchandise in suit must stand or fall on the answer to this question, Are these viscose caps or capsules similar in the use to which they may be applied to the bottle caps of metal covered by said paragraph 196? We think they are; and we believe our conclusion is amply supported by the testimony of the importer's own witness. Asked the question, "Could a metal bottle cap be used on such a tube?" he replied, "It could be used on the tube, yes; it could be—a bottle cap could be sealed on anything in the shape of a round neck, piece of glass, but it is a question of putting a cap on to evolve a purpose."

Now, while we do not concede that jars or tubes are by any means bottles, nevertheless is it not a fact that, if metal caps for bottles may serve the same purpose with respect to the tubes in question as do the viscose caps under consideration, the latter, by reason of their structure, form, and pliability, would serve the same function with reference to bottles as is performed by metal caps? Certainly the result sought to be accomplished is precisely similar in each case—that of sealing or covering the mouth or opening of the vessel.

Again, it is not essential that the vessel should be a bottle; to merely establish that the use for which the article is designed is similar to that for which bottle caps are employed is sufficient to fix its dutiable classification. The similitude provision in the statute plainly refers to a similarity in the employment of an article or its effect in producing similar results. Murphy v. Arnson (96 U. S., 131).

It is likewise unnecessary to establish a similarity in more than one particular. It is enough if there be a substantial similitude in any one of the particulars mentioned—material, quality, texture, or use. Arthur v. Fox (108 U. S., 125); Pittsburgh Plate Glass Co. v. United States (2 Ct. Cust. Appls., 389; T. D. 32162).

In Abstract 32871 (T. D. 33591) this board, in commenting upon the use to which articles similar to those here in question were employed, said:

The article is used in capping dental cement. It is form of a preparation of viscose which, while kept submerged in liquid, remains in a soft, pliable condition, and which, when put over the cork of a bottle and left to dry, shrinks, forming an air-tight and sealed cap for the bottle and its contents.

The conclusion of the board that there is no direct provision of the tariff law applicable to the merchandise and that the similitude

provision is the one applicable is a decision of a question of law. United States *v.* Hahn (91 Fed., 755), Herrman *v.* Arthur's Executors (127 U. S., 363).

Whether or not there was a similitude in use between bottle metal caps and these viscose caps was a question of fact for the board to determine, its conclusion being a finding of fact. Greenleaf *v.* Goodrich (101 U. S., 278), Herrman *v.* Arthur's Executors (127 U. S., 363).

It follows, the first proposition being undisputed, that the court will not review the finding of the board on that question of fact unless the finding is wholly without evidence to support it or is clearly contrary to the weight of evidence. United States *v.* National Aniline & Chemical Co. (3 Ct. Cust. Appls., 10; T. D. 32287), United States *v.* Reibe (1 Ct. Cust. Appls., 19; T. D. 30776), Holbrook *v.* United States (1 Ct. Cust. Appls., 263; T. D. 31317), Carson *v.* United States (2 Ct. Cust. Appls., 105; T. D. 31656).

We are of the opinion, however, considering the whole record and all its parts, that the finding is at least clearly contrary to the weight of the evidence. But one witness testified, and the board rests its decisions particularly upon a part of his testimony and comments upon its finding in another case.

As to the comparative uses of these caps, the witness testified that the articles are viscose caps imported in large jars packed in alcohol to preserve them; that when the alcohol evaporates or they are taken out they harden.

Q. The alcohol keeps it soft?—A. The alcohol keeps it soft.

Q. Will you please describe the manner of using these caps?—A. Well, there is a tube; we put them on a tube that has no neck at all, just a straight, long tube, and the reason why this cap is applicable for that tube is because when it is pulled over the top of the cork, over part of the tube, it hardens and adheres there. It is not like a metal cap that sets simply down on the neck of a bottle, but this has a gelatin appearance. We do not know whether it is gelatin or not, and for that reason it sticks on the tube, but it does not fit as you say, our expression about a bottle cap, it does not fit, it does not catch, adhere.

    *       *       *       *       *       *       *

Q. Are these viscose caps used on bottles?—A. No; we do not——

Q. What are they used on?—A. Tubes.

Q. Test tubes?—A. Yes; tubes of a test appearance.

Q. Could a metal cap be used on such a tube?—A. It would not have the same— it would not be applicable at all.

Mr. BALDWIN. I ask that the answer be stricken out.

General Appraiser FISCHER. Strike out the answer.

The last question was repeated by the stenographer as follows:

Q. Could a metal bottle cap be used on such a tube?—A. It could be used on the tube, yes; it could be—a bottle cap could be sealed on anything in the shape of a round neck, a piece of glass, but it is a question of putting a cap on to evolve a purpose. It is not merely——

Mr. BALDWIN. You have answered the question.

Q. What material do these tubes contain?

Mr. BALDWIN. I object to that unless it is shown that the witness knows.

Q. Do you know?—A. Yes, I do know. They contain products which when put in a glass of water evaporate. These products absorb moisture from the air. They need a cap which will be impervious to the air and prevent any moisture absorbing through the cork.

Q. What would be the effect of moisture in the product?—A. It would break down the products, it would crumble them down.

Q. What is the purpose of using such a cap, Mr. Nevin, as this cap here, on such products as you describe?—A. Well, I have just answered that question. It is for the purpose of preventing air from getting through which it would undoubtedly with a metal cap, which can not be fastened—adhere.

Q. Would the air break down these products as well as the moisture?—A. Positively, yes.

\*        \*        \*        \*        \*        \*        \*

Q. Do you know any use for them except that of air-tight sealing?—A. Air-tight sealing.

Q. Or capping a tube? A.—That is all we use it for. You can use them over anything for air-tight sealing, use them over a suppository or——

The witness further testified that these caps were put on by hand and could not be put on by machinery as are bottle caps.

The board, as quoted, deduces from this testimony:

> Nevertheless, is it not a fact that, if metal caps for bottles may serve the same purpose with respect to the tubes in question as do the viscose caps under consideration, the latter, by reason of their structure, form, and pliability, would serve the same function with reference to bottles as is performed by metal caps?

We think the deduction unsupported by this record. The witness nowhere said that the uses of the caps were interchangeable. The most he could have been held to have said was that the metal caps "*could* be used on the tube, yes; it *could* be—a bottle cap *could be sealed on anything* in the shape of a round neck, a piece of glass, but it is a question of putting a cap on to *evolve a purpose.*" The witness did not in our opinion here state what is done practically or commercially with bottle caps, but what "could" be done, not commercially and practically, but perhaps experimentally or by physical possibility. There is not a word of testimony controverting the qualifying statement of the witness that these caps are to "evolve a purpose," later explained to be of "air-tight sealing." That also was the use the board found in Abstract 32871 (T. D. 33591), cited in its opinion as a precedent. Nor is the statement of the witness disputed (p. 9, record) that "it is for the purpose of preventing air from getting through, *which it would undoubtedly with a metal cap,* which can not be fastened—adhere."

So that it would appear uncontradicted that the especial use and design of this cap is to form an air-tight and air-sealed cap whether for bottles or tubes, and that metal caps do not adhere and do not effect this purpose. Common knowledge suggests that metal bottle caps are either ornamental or used to protect and hold in place the cork of the bottle. Viscose caps are used to hermetically seal the contents of bottles or tubes; metal bottle caps are used to protect and

hold in place the corks of bottles or tubes. The uses, therefore, are distinctly different. We are, therefore, of the opinion that the record does not sustain the finding of the board and that its decision should be, and is, *reversed.*