CRIBARI & SONS *v.* UNITED STATES [1]

[1] C. D. 6.

## United States Customs Court, Second Division

(Decided July 1, 1938)

*Strauss & Hedges (Howard C. Carter* of counsel) for the plaintiffs.
*Joseph R. Jackson,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been exacted on a particular importation invoiced as metal seals for bottles and metal disks or caps. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 30 per centum ad valorem under the provision in paragraph 390 of said act for "Bottle caps of metal * * * if not decorated, colored, waxed, lacquered, enameled, lithographed, electroplated, or embossed in color."

Samples of the imported articles were marked in evidence as Collective Exhibit 1, one representing the metal disk or cap and the other the so-called seal composed of galvanized wire. The plaintiffs called as a witness Alexander Lessane, a chemist in their employ. He testified that although the two parts of Collective Exhibit 1 are separately enumerated in the invoice, nevertheless they were ordered together; that the two constitute one complete bottle cap; that in bottling champagne the metal cap is placed on top of the cork and the wire seal or hood is placed over the metal disk or cap and twisted so as to hold it down; that Collective Exhibit 1 is not decorated, colored, waxed, lacquered, enameled, lithographed, electroplated, or embossed in color; and that the metal cap or disk has a depression in the center to permit the extraction of the cork when it is desired to serve the contents of the bottle.

On cross-examination the witness testified that he ordered the caps as disks and the wire devices as wire hoods, the latter being called in French a "musselet"; that the colored collapsible metal cap 4 inches long produced by counsel for the defendant and later admitted in evidence as Illustrative Exhibit A, was never placed by the witness over the metal disk and wire hood, but that some persons so use it for decorative purposes.

The Government offered the testimony of Otto Huber, secretary and treasurer of Budde & Westermann, a corporation dealing in

bottling supplies, including markings, caps, wire hoods, disks, labels, and other articles required by whisky and wine makers and dealers; that he has been buying and selling bottle caps at wholesale throughout the United States since 1893; that his corporation publishes a catalog, a copy of which is marked in evidence Illustrative Exhibit B; that pages 75 to 82 thereof contain illustrations of bottle caps, samples of which were marked in evidence Illustrative Exhibits C, D, E, F, and G; that he has dealt in articles similar to Collective Exhibit 1 since 1903; that he has always called the metal cap a champagne disk and the wire seal or hood a champagne wire hood; that he has heard the hood called a "musselet"; that page 221 of the catalog marked Illustrative Exhibit B contains illustrations of articles similar to the two parts of Collective Exhibit 1 under the names of "champagne wire hoods" and "champagne tin disks", respectively.

At this juncture the witness produced a sample of a crown cork which was marked Illustrative Exhibit H for identification, and a sample of a screw cap which was marked Illustrative Exhibit I for identification.

The witness then testified that in bottling champagne and sparkling wines a cork is first driven into the neck of the bottle; that the metal disk is placed on top of the cork; that the wire hood is placed on top of the disk and wound tightly around the neck of the bottle; and that then an ornamental collapsible tube, the top of which is shaped like a cork and perforated similarly to Illustrative Exhibit G, is placed over the entire neck of the bottle so that the cork will not blow off; and that the purpose of the perforations in Illustrative Exhibit G is to allow some circulation of air for the benefit of the cork.

On cross-examination he testified that Illustrative Exhibits A to G, inclusive, do not perform any function in holding the liquid in the bottle; that a crown cork like Illustrative Exhibit H is forced on to the top of the bottle usually by machine; that he has frequently seen articles like Collective Exhibit 1 used; that they were put upon the top of the cork of a champagne bottle; that he has never seen one portion of Collective Exhibit 1 used without the other portion; that the articles described as No. 6–C Bernardin Bottle Caps on catalog page 71 marked in evidence as Illustrative Exhibit J are similar to Collective Exhibit 1 in that the whole thing can only be used on a bottle in which the cork has been driven in completely flush with the top of the neck of the bottle; and that the cap shown in Illustrative Exhibit J is one type of bottle cap, there being many other types.

The plaintiffs' witness Alexander Lessane, called in rebuttal, reiterated his testimony that it was impossible to use one portion of Collective Exhibit 1 without the other. He also testified that he had used articles like Illustrative Exhibits A, B, C, D, E, F, and G,

and that they were used to cap bottles as decorations; that none of them performs any function in holding a liquid within the bottle; that the majority of champagne bottles at the present time do not have caps like Illustrative Exhibits A to G for the reason that they are an unnecessary expense.

On cross-examination he testified that where he had seen champagne bottles without caps similar to Illustrative Exhibits A to G, inclusive, they usually had foil wrapped around them as a decoration, and that the foil, like the cap which it takes the place of, does not serve any purpose in holding the liquid in the bottles.

From this record we find the following facts:

1. That the metal disks and the wire hoods constituting the imported merchandise at bar consist of entireties.

2. That the sole use thereof is to hold the cork firmly in place in the neck of bottles containing champagne or sparkling wines.

3. That while said disks and wire hoods do not, by themselves and without the cork, prevent the liquid from escaping from the bottles, the same is true of the various types of articles which are conceded to be bottle caps, and which are represented herein as Illustrative Exhibits A to G, inclusive.

4. That similar devices, in one piece and designed to hold bottle corks in place as depicted and described in Illustrative Exhibit J, are admittedly bottle caps.

Upon these facts counsel for the Government in his brief filed herein contends that because the articles in question are bought and sold as disks and wire hoods they are not bottle caps within the purview of the *eo nomine* provision therefor in said paragraph 390.

An examination of the record fails to disclose any proof of commercial designation in accordance with the rule laid down by the United States Court of Customs and Patent Appeals that would exclude the imported merchandise from classification under said paragraph 390. The proof offered by the Government that articles other than those here imported are known as bottle caps will not exclude the present merchandise from that term. In fact, the defendant's witness admitted on cross-examination that Illustrative Exhibits A to G, inclusive, were not all of the types of bottle caps which he knew.

In *Cohn et al.* v. *Erhardt*, 44 Fed. 747, where certain hooks and eyes made of iron coated with a hard, brilliant, black varnish, known as "japan," were claimed to be dutiable under the provision for "japanned ware," the collector contended that said hooks and eyes were not known in the trade as japanned ware. Although several witnesses testified that they had dealt in japanned ware but not in hooks and eyes, nevertheless the court held that the latter articles were japanned ware and as such dutiable under the tariff provision therefor.

In the instant case it is uncontradicted that the imported articles are used to keep the corks in champagne bottles and that they perform the same function as do bottle caps. But counsel for the Government contends that the provision for bottle caps in said paragraph 390 is an *eo nomine* provision and not a designation by use. That a provision for an article by name may also be a designation by use has been frequently held by this and by the appellate court. For instance, in the case of *United States* v. *Hudson Forwarding & Shipping Co.*, 14 Ct. Cust. Appls. 188, T. D. 41700, the appellate court held that the provision for "shoe leather" was intended to cover any leather chiefly used in the manufacture of shoes. In that case, which arose under the Tariff Act of 1922, the court held that the language in paragraph 1431 implied that the Congress knew that certain of the leathers therein provided for were used for shoe leather, which, of course, meant in making shoes, and that it must have been intended that leather chiefly so used should be so classifiable thereunder.

Counsel for the Government has also called our attention to an excerpt from the Summary of Tariff Information of 1929, and contends that said excerpt successfully demonstrates that the provision for bottle caps was intended by the Congress to be limited to bottle caps of a decorative nature. Such contention ignores the plain language of paragraph 390 wherein provision is made for two classes of bottle caps at different rates, those not decorated at 30 per centum ad valorem, and those decorated at 45 per centum ad valorem.

In the case of *C. H. King* v. *United States*, T. D. 24262, G. A. 5290, 6 Treas. Dec. 187, this court (then the Board of General Appraisers) in February 1903 held that the charges for tin tops or caps, corking, wiring, and labeling should not be included as part of the dutiable value of the ginger ale.

From the very beginning both this court and the Court of Customs Appeals have referred to corking, wiring, and capping bottles. For example, in the case of *Francis H. Leggett & Co. et al.* v. *United States*, T. D. 27317, G. A. 6353, 11 Treas. Dec. 606, as far back as 1906, this court held that in the distribution of charges on bottles the cost of corking, capping, labeling, wiring, and like fittings should be treated as part of the value of the bottles rather than of their contents.

In *Nevin* v. *United States*, 5 Ct. Cust. Appls. 423, T. D. 34945, the precise question here raised was passed upon by the court. In the course of its decision the court said:

These importations consist of so-called viscose caps. They were returned by the appraiser at the port of New York as "bottle caps composed of viscose" and assessed for duty by the collector by similitude to "bottle caps of metal" under the provisions of paragraph 196, tariff act of 1909, reading as follows:

196. Bottle caps of metal, if not colored, waxed, lacquered, enameled, lithographed, or embossed in color, one-half of one cent per pound and forty-five per

centum ad valorem; if colored, waxed, lacquered, enameled, lithographed, or embossed in color, fifty-five per centum ad valorem.

\* \* \* \* \* \* \*

They are claimed by appellants to be dutiable as nonenumerated manufactured articles under paragraph 480 of the same act. On appeal counsel for the importer at oral argument urged that the express language of paragraph 196, "bottle caps. of metal," was such a term of limitation as *ex vi termini* excluded classification. by similitude thereunder of all articles not within its literal terms. This court, however, in Strauss & Co. *v.* United States (2 Ct. Cust. Appls., 203; T. D. 31946),. laid down the rule that such exclusion would not be assumed or implied from mere descriptive or *eo nomine* language of a paragraph, but there must be express language of exclusion or of condition tantamount to the same. See also Fensterer & Ruhe *v.* United States (1 Ct. Cust. Appls., 93; T. D. 31110, at page 96 *et seq.*). These cases rule that issue here. \* \* \*

\* \* \* \* \* \* \*

\* \* \* Common knowledge suggests that metal bottle caps are either ornamental or used to protect and hold in place the cork of the bottle. \* \* \*

It is uncontradicted that the metal disks together with the wire hoods constituting the imported merchandise at bar are used to protect and hold in place the corks in champagne bottles. They therefore perform the function of bottle caps and are to all intents and purposes bottle caps within the meaning of said paragraph 390; and not being decorated, colored, waxed, lacquered, enameled, lithographed, electroplated, or embossed in color, they are properly dutiable under said paragraph at the rate of 30 per centum ad valorem, as alleged by the plaintiffs. That claim is therefore sustained, but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.