(C. D. 1825)

NESTLE-LEMUR COMPANY v. UNITED STATES

United States Customs Court, First Division

(Decided November 29, 1956)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "Polyethylene Brush Caps with Bristles" and was classified by the collector of customs under the provision in paragraph 1506 of the Tariff Act of 1930 for—

* * * all other brushes, not specially provided for, * * *

with duty assessment at 50 per centum ad valorem. Both directly and by similitude under the provisions of paragraph 1559, the claim is made for duty at the rate of 12½ per centum or 17½ per centum under paragraph 390 of the said act, as modified by the Presidential proclamation relating to the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, reading as follows:

Bottle caps of metal, collapsible tubes, and sprinkler tops:
    Not decorated, colored, waxed, lacquered, enameled, lithographed, electroplated, or embossed in color_____12½% ad val.
    Decorated, colored, waxed, lacquered, enameled, lithographed, electroplated, or embossed in color_____17½% ad val.

If the foregoing provision, either directly or by similitude, should be found not to be applicable to the merchandise, alternative claim is made for duty at the rate of 10 per centum ad valorem under the provision for nonenumerated manufactured articles in paragraph 1558 of said act, as modified by the said Presidential proclamation.

A sample of the involved merchandise is before us as plaintiff's exhibit 1. It consists of a bottle top or closure made of pliable plastic material, having internal threads to permit screwing it on external threads of a bottle made of similar material (a sample of which bottle is before us as plaintiff's exhibit 2). There is a small hole in the center of the article, and three rows of bristles are inserted across the center of the outside of the top. The only article imported and the classification of which is involved here is the bottle top, the bottle not having been imported at the same time or being of domestic manufacture.

Counsel have stipulated that the component material of chief value of the imported article is polyethylene, a plastic material made from methane gas.

After importation, the bottle and the imported article are screwed together by means of the threads, and the combination is sold empty to the public in connection with capsules of hair tint or dye. In use, the capsule is emptied into the bottle which is then filled with water and the imported article is screwed on. The liquid is applied to the hair by inverting the bottle over the head and squeezing the same. The liquid then flows through the hole in the center of the cap in greater or lesser amount, depending upon the pressure used on the bottle, and the bristles set in the cap are used to distribute the liquid as evenly as possible.

It was stated by plaintiff's witness that if the bristles were not set in the cap a separate brush would have to be used to distribute the liquid.

In support of its contentions, plaintiff argues, first, that the imported article is not a brush, and, second, that, if it may be characterized as

a brush, such feature is secondary to a primary function as a bottle cap or sprinkler top, and that the latter features should control its classification.

Citing the first definition found in Webster's New International Dictionary, 1933, of the term "brush" as follows:

1. An instrument composed of bristles, or the like, set in a suitable back or handle, and used for various purposes. *Brushes* have different shapes and names according to their use; as clothes *brush*, paint *brush*, etc. [Italics quoted.]

plaintiff argues that bristles in the imported article are not set in a "suitable back or handle" and that, in its imported condition, it is not usable for the purpose intended.

We think that the bristles in the imported article are set in a back suitable for the purpose for which the article was intended to be used and that the descriptive portion of the definition is, therefore, satisfied in the case of the article at bar.

It is noted that the quoted definition has a reference to the use of brushes, and, in the case of *Keer, Maurer Company* v. *United States*, 32 Cust. Ct. 441, Abstract 57959, we observed that, in a general way, there was a use connotation to the term in the sense that articles embraced by the term exhibited a *"brush*-ing" action in their use. There is no question, however, but that the term as used in the tariff act provision, hereinbefore quoted, is not a use designation but is an *eo nomine* designation, that is to say, the test of classification is not the use of the article, but its name. Under these circumstances, use, in the condition as imported, is not a necessary concomitant of articles classifiable as brushes; it is sufficient if, in the condition as imported, they respond to the name of "brush." We think there is no question but that the articles at bar are, in that sense, brushes.

This brings us to the second point made by the plaintiff, which is actually a question of relative specificity, i. e., if the articles at bar are brushes, are they not also bottle caps or sprinkler tops, and, in such case, should they not take classification under the provision therefor either directly or by similitude?

We do not think that the imported article can be denominated a bottle cap, inasmuch as bottle caps are commonly and generally understood to refer to articles which protect and hold in place the cork of a bottle. *Nevin* v. *United States*, 5 Ct. Cust. Appls. 423, 426, T. D. 34945. And see the definition of "bottle cap" in Webster's New International Dictionary, 2d edition, 1945, as follows:

a   A metal cap to fit over and seal the top of a bottle.   b   A paper disk or crown, usually treated with paraffin, for sealing the top of a milk bottle.

Certainly, the article at bar performs none of the functions referred to and, hence, is not a bottle cap.

We are satisfied that there is reasonable ground for holding that the articles at bar have, at least in part, the characteristics of sprinkler

tops. The term is a common one and has appeared in earlier tariff acts. In the Summary of Tariff Information, 1929, compiled by the Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives at the time the bill which ultimately became the Tariff Act of 1930 was under consideration, the term is thus defined (p. 887):

Sprinkler tops are perforated metal caps or stoppers for bottles from which liquids, such as perfumery and toilet waters, are sprinkled.

We find, therefore, that the articles at bar have the characteristics of two tariff enumerations, viz, brushes and sprinkler tops. From the description of the use of the article, it does not appear to us that one characteristic may be taken to be the paramount or dominant characteristic, as was the case of the combination coathanger clothes brushes involved in *Norwood Co.* v. *United States*, 63 Treas. Dec. 605, T. D. 46299. There, it was determined that the brush was a merely incidental feature of the article, and it was accordingly classified under the provision applicable to the coathanger element of the article.

What we have here is a combination brush and sprinkler top, both features being equally essential to the denomination or description of the article. Indeed, it is described on the invoice and was called by the witness a "brush cap." We think, in such case, it might validly take classification under either the provision for "brushes" in paragraph 1506 or the provision for "sprinkler tops" in paragraph 390, both being equally applicable. In such case, the provision in paragraph 1559 of the tariff act that—

* * * If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

determines the result.

For the foregoing reasons, the protest claims are overruled, and judgment will issue accordingly.