UNITED STATES *v.* KAUFMAN & VINSON CO. (No. 4992)[1]

United States Court of Customs and Patent Appeals,
November 10, 1959

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Alan S. Rosenthal*, and *Robert Wang*, trial attorneys, of counsel), for the United States.

[1] C.A.D. 720.

*Siegel, Mandell & Davidson, Joshua M. Davidson, (David Serko of counsel),* for appellee.

[Oral argument October 6, 1959, by Mr. Wang and Mr. Serko]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, ASSOCIATE Judges, and Judge WILLIAM H. KIRKPATRICK [2]

RICH, Judge, delivered the opinion of the court:

■ This appeal is from the judgment of the United States Customs Court, Second Division, C.D. 2050, sustaining the protest of the importer to the classification of wire hoods for holding the corks in champagne bottles as articles in chief value of metal under paragraph 397, Tariff Act of 1930, as modified by GATT. The importer claims the correct classification is as "Bottle caps of metal" under paragraph 390.

The imported articles, called "muselets," are twisted wire structures in common use to secure the corks or stoppers of champagne or sparkling wine bottles against blowing out under the gas pressure within the bottle. The muselet is shaped somewhat like a dog muzzle, to which it appears to be linguistically related, the wire being so bent as to form a top ring for engagement with the top of the cork, four legs extending therefrom with loops in their ends, and a tie wire extending through the loops adapted to be tightened around the neck of a bottle beneath the annular ridge with which wine bottles are provided, the tie wire having a loop by which it can be manually untwisted. When the bottle has a natural cork, a small metal disc is used over the top of it to keep the wire from sinking into the cork. In recent years, and since the early 1950's, stoppers of synthetic resin ("plastic corks") have come into use in place of natural corks on an increasing scale. These plastic stoppers have such inherent rigidity as to obviate the need for the metal discs and hence muselets may rest directly against the tops of these modern cork substitutes and are extensively so used.

The competing Tariff Act provisions are:

*Assessed:* Paragraph 397, Tariff Act of 1930, as modified by T.D. 51802:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*          \*          \*          \*          \*          \*          \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*          \*          \*          \*          \*          \*          \*

Other \* \* \*_____22½% ad val.

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to the provisions of Title 28, United States Code, Section 294(d).

*Claimed:* Paragraph 390, Tariff Act of 1930, as modified by T.D. 52739 and T.D. 51802:

> Bottle caps of metal, collapsible tubes and sprinkler tops:
> Not decorated, colored, waxed, lacquered, enameled, litho-
> graphed, electroplated, or embossed in color_____ 12½% ad val.

This is the third case in which the classification of merchandise of this kind has been considered by the Customs Court. The question involved does not appear to have reached this court or its predecessor before. These are the decisions below:

(1) In *Cribari & Sons* v. *United States*, 1 Cust. Ct. 19, C.D. 6, decided July 1, 1938, by the Second Division, muselets, together with the metal discs which are used with them, were imported for use with natural corks, plastic stoppers not having come into use until much later. As here, the above paragraphs of the Tariff Act of 1930 were involved, the goods having been assessed as manufactures of metal under paragraph 397 and the importer having claimed under paragraph 390 as "Bottle caps of metal * * *." The protest was sustained, the court holding that the muselets or wire hoods and discs were entireties which functioned solely to hold corks in place, that they therefore performed the function of bottle caps and were "to all intents and purposes bottle caps within the meaning of said paragraph 390."

(2) In *I. F. Schnier & Co.* v. *United States*, 15 Cust. Ct. 294, Abs. No. 50588, also decided by the Second Division, on October 17, 1945, the importation was wire hoods or muselets alone, without the metal discs, and the same Tariff Act paragraphs were involved. Plaintiff contended that the *Cribari* case was controlling but the court disagreed, holding that the cases were distinguishable on the basis of their facts and that the *Cribari* case had no application. The court said that the wire hoods by themselves were at most *parts* of bottle caps, that since there was no provision for parts of bottle caps in paragraph 390 the wire hoods could not find classification there, overruled the protest, and left the hoods classified as manufactures of metal, n.s.p.f., under paragraph 397.

(3) In the instant case, *Kaufman & Vinson Co.* v. *United States*, 41 Cust Ct. 268, C.D. 2050, decided by the Second Division December 3, 1958, the goods and the paragraphs involved were identical with those in the *Schnier* case but the lower court reached the opposite result, sustaining the protest and holding the wire hoods to be classifiable as "Bottle caps of metal" under paragraph 390. As the lower court found a factual distinction in the *Schnier* case over the *Cribari* case, because in *Cribari* the metal discs were part of the importation whereas in *Schnier* they were not, so it now finds a factual distinction from the *Schnier* case in that advanced methods of bottling and the

use of plastic stoppers makes the use of metal discs unnecessary. The result, however, is that after thirteen years, during which muselets have stood adjudicated to be manufactures of metal n.s.p.f. rather than bottle caps of metal, they are now abruptly held to be bottle caps of metal for no better reason than that plastic corks have come into widespread use and protective discs need not be used with them. The reasoning is, apparently, that if a natural cork and hence the disc is used, a muselet is only *part* of a bottle cap but if a disc is not used, then the muselet becomes a complete bottle cap. It is our opinion that a muselet is in neither instance a bottle cap.

It is not urged in this case that anything other than common meaning controls. The principal argument of appellee is that the common meaning of "bottle caps," as used in the Tariff Act of 1930, was "defined" or "determined" in *Nevin* v. *United States*, 5 Ct. Cust. Appls. 423, T.D. 34945. That decision, in 1914, was under the Tariff Act of 1909 in which paragraph 196 provided for "Bottle caps of metal," the same term used in the present and in the intervening acts. The goods in the *Nevin* case were viscose caps of the type applied wet and allowed to shrink in place as they dry. The question was whether the Board of General Appraisers had correctly held them to be "Bottle caps of metal," though they were not metal, by similitude of use. The evidence was that the viscose caps were used on corked tubes somewhat like test tubes, not on bottles, because they adhered to the tubes. The court found that there was not a similitude of use as between the viscose caps and metal bottle caps, observing that the former were used because they adhered and formed an air-tight cap whereas "metal caps do not adhere and do not effect this purpose." It then continued with the following, the first sentence being the one relied on by appellee:

Common knowledge suggests that metal bottle caps are either ornamental or used to protect and hold in place the cork of the bottle. Viscose caps are used to hermetically seal the contents of bottles or tubes; metal bottle caps are used to protect and hold in place the corks of bottles or tubes. The uses, therefore, are distinctly different.

It is obvious that all the court was doing was to explain why there was no similitude of use. We have no clue as to what kinds of "metal bottle caps" it was thinking of and even though it was thinking of some kind of metal cap that would hold a cork in place, it certainly was not making an adjudication that every metal device that would hold a cork in place was a bottle cap of metal within the meaning of the tariff act. It certainly was not "defining" the term bottle cap. Nevertheless, it is argued that this was a judicial construction of the term, ratified by its reenactment without change through several successive acts. Even if we concede this point, it does not follow that a

muselet is a bottle cap merely because it keeps corks from popping out of champagne bottles. The court was not discussing a muselet. "Common knowledge suggests" that it has almost none of the characteristics of things described as caps. For example, Webster's International Dictionary, in both the 1934 and 1954 editions, gives, inter alia, the following definitions:

*bottle cap.* *a* A metal cap to fit over and seal the top of a bottle *b* A paper disc or crown, usually treated with paraffin, for sealing the top of a milk bottle.

We note the emphasis on fitting over and sealing and observe that in the instant case it is the cork rather than the muselet that seals and that, in the above sense of a cap and other senses too well known to require discussion, a muselet does not cap a bottle. It is a kind of harness which anchors the cork and that is all it does. The closure of the bottle is effected by the stopper which is inserted in its neck. As a sealing device, this is the reverse of a cap, which is something placed *over* the neck. Caps and corks are not necessarily alike just because they both seal bottles. Unless one can regard the cork or plastic stopper in a bottle as a "cap," we do not see how we can regard a muselet as even a part of a bottle cap.

We therefore *reverse* the judgment below.