**JARRELL–ASH CO.**

v.

**UNITED STATES.**

Protests 62/11868–16159; C.D. 3261.

United States Customs Court
Second Division.
Jan. 25, 1968.

Walter E. Doherty, Jr., Boston, Mass., for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Avram Weisberger, trial attorney), for defendant.

Before RAO, FORD, and MALETZ, Judges.

MALETZ, Judge:

The importations in these consolidated cases were invoiced as silver rods, silver grain, gold rods, gold grain, and gold sponge. The silver rods and silver grain were classified by the collector as articles in chief value of silver under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, and assessed with duty at 21 per centum ad valorem.

The gold rods, gold grain, and gold sponge were classified under the same paragraph 397, as modified, supra, as articles in chief value of gold and assessed with duty at 50 per centum ad valorem.[1] Plaintiff claims that all the merchandise is properly classifiable as gold or silver bullion, as the case may be, under paragraph 1638 of the Tariff Act of 1930, and thus entitled to entry free of duty.[2]

The parties have stipulated that the merchandise in issue (representative samples of which are in evidence) is "99.99 per cent pure gold or pure silver." The silver rod is solid, cylindrical in shape, and measures some four inches in length and one-quarter inch in diameter. The gold rod is likewise solid and cylindrical in shape but is much smaller than the silver rod, measuring about one and one-quarter inches in length and one-eighth inch in diameter. The other items are extremely small, irregularly shaped pieces of gold and silver, which have no uniform longitudinal or latitudinal measurement.

The evidence in the case is essentially undisputed. It shows, in brief, that the importations—which are of known purity (as described above)—are used as laboratory standards for analyzing gold or silver samples that contain an unknown quantity of the metal. In the laboratory process, the gold or silver rod is cut into pieces as small as possible which are dissolved in an acid; the elements to be tested are added and the analysis of the sample is then conducted through use of a spectrograph.[3] The

---

1. Paragraph 397 of the Tariff Act of 1930, as modified, provides in part as follows:
   Articles or wares not specially provided for, whether partly or wholly manufactured:
     \*   \*   \*   \*   \*
   Composed wholly or in chief value of gold
   \* \* \*................ 50% ad val.
   Composed wholly or in chief value of silver
   \* \* \*................ 21% ad val.

2. Paragraph 1638 of the Tariff Act of 1930 exempts from duty the importation of "Bullion, gold or silver."

3. While the silver rod is generally used to prepare standards, it is used on occasion as an electrode—in place of a carbon electrode—to determine the carbon content of a sample. This, however, is an incidental feature and fugitive use of the rod which does not affect its classification. See United States v. Quon Quon

gold grain, gold sponge, and silver grain are used for the same purpose as the rods, i. e., as a standard for analyzing gold and silver samples. Indeed, if the grain or sponge is available, the rod itself is not used.

Plaintiff asserts that the importations are "bullion" within the meaning of paragraph 1638 of the Tariff Act of 1930, its argument being that Congress intended to include in that paragraph all forms of gold and silver in their pure or reasonably pure state as raw material. Defendant's position is that "bullion," as the term is used in paragraph 1638, does not cover a finished article of commerce but is applicable only to something that must be shaped or worked on before it becomes an article of commerce. Defendant adds in this connection that the importations involved here are not worked on or shaped to form another product but are themselves the ultimate product.

Resolution of the dispute thus turns on the meaning of the term "bullion" as used in paragraph 1638 of the Tariff Act of 1930. It is, of course, basic that "where [as here] the question of commercial designation is not in issue, the meaning to be ascribed to a tariff term is its common meaning, and the ascertainment of common meaning is a matter of law to be determined by the court on the basis of its own understanding of what that meaning is. * *

In reaching its conclusion with respect to common meaning * * * the court [may] refresh its recollection by resorting to relevant lexicographical and other standard authorities." C. J. Tower & Sons of Buffalo, Inc. v. United States, 57 Cust.Ct. 20, 26, C.D. 2718 (1966), and cases cited. Aided by an examination of such authorities, we conclude that "bullion" in its common meaning is uncoined gold or silver in the mass considered as so much metal without regard to any value imparted to it by its form. See Webster's New International Dictionary (3d ed. 1961); New Century Dictionary (1946 ed.); Funk & Wagnalls' New Standard Dictionary (1946); Encyclopaedia Britannica (1947 ed.); Summary of Tariff Information, 1929, schedule 15, page 2243; 12 C.J.S. p. 558.[4] Normally bullion is in the form of ingots, bars, plates, and the like. Ibid. But it may also consist of other forms or shapes so long as the form or shape does not impart value to the mass.[5] Thus in I. Dejonge & Co., T.D. 12000, G.A. 913 (1891), the Board of General Appraisers classified as silver bullion, rather than as a manufacture of silver, an article which was shown to be an irregular mass of pure silver, about four and one-half inches long and one and one-half inches in depth, and the same in width, with the two ends rudely inclined or sloped so that the center portion could serve as a handle, without any special adaptation to such use.[6] Similarly, the Bureau

---

Company, 46 CCPA 70, C.A.D. 699 (1959); Nestle-Lemur Company v. United States, 37 Cust.Ct. 209, C.D. 1825 (1956).

4. Webster, for example, defines bullion as "gold or silver considered merely as so much metal without regard to any value imparted to it by its form * * * specif.: Uncoined gold or silver in the shapes of bars, ingots or comparable masses. b. metal in the mass." Earlier editions of Webster contain essentially the same definition of "bullion." See e. g., Webster's New International Dictionary (1930); Id. (2d ed., 1934).

5. Bullion may (inter alia) be in the form of lumps. See Black's Law Dictionary (4th ed., 1951).

6. Plaintiffs' evidence in Dejonge showed that the article was sent to them from abroad as a present or souvenir. They denied that it was intended for any special employment but conceded it might be used as a paperweight. The board in upholding the protest and classifying the article as silver bullion stated: "Webster defines bullion to be uncoined gold or silver in the mass. We find from the exhibit and evidence that the article comes within this definition, and, while it does not present the appearance of ordinary bars of bullion, we do not find such further manufacture of the article as to change its classification."

of Customs in T.D. 54795(39), 94 Treas. Dec. 99, 106 (1959), ruled that *"Silver Bullion* recovered from photographic solution by an electrolytic process [was] classifiable as such under paragraph 1638, Tariff Act of 1930." While this ruling, as published, is meager, it would appear that silver recovered from a photographic solution would not be recovered in the form of ingots, bars, plates, etc., but rather would be recovered in a form not unlike the grain involved in the present case.

Against this background, it is apparent that the articles in issue qualify as "bullion" within the meaning of paragraph 1638. For the articles are uncoined gold or silver in the mass; they are merely so much metal and nothing more; and their form and shape impart no value to them whatever. No doubt the importations have been formed by a manufacturing process. (The same is true of ingots, bars, and plates.) But the mere fact that such items are manufactured is obviously not enough to disturb their status as "bullion." Thus, there can be no question that the *eo nomine* classification of "bullion" under paragraph 1638 is more specific than the classification under paragraph 397 of articles, wholly or in chief value of gold or silver, partly or wholly manufactured, not specially provided for. This is to say that the rule of relative specificity is applicable here. See e. g., United States v. Seeman Bros., 13 Ct.Cust.App. 660, 663, T.D. 41491 (1926); United States v. Selectile Co., Inc. et al., 49 CCPA 116, C.A.D. 805 (1962).

We hold in summary that the *importations in the present case are all* properly classifiable under paragraph 1638 of the Tariff Act of 1930 as "bullion" and thus free of duty. The protests are sustained and judgment is entered accordingly.

RAO, C. J., and FORD, J., concur.