## UNITED STATES *v.* ECKSTEIN.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 52. Argued November 10, 1911.—Decided December 4, 1911.

Section 7 of the Dingley Tariff Act of June 24, 1897, c. 11, 30 Stat. 159, known as the similitude clause, does not require that there shall be similarity of material, quality, texture and use in all four particulars, but a substantial similarity in one particular may be adequate to classify an article thereunder.

Imitation horsehair was properly classified under the similitude clause with cotton yarn enumerated in paragraph 302 of the Tariff Act instead of with silk yarn under paragraph 385, there being a substantial similitude with the former both as to material and use, even if not as to quality or texture.

167 Fed. Rep. 802, affirmed.

THE facts, which involve the correct classification, under the tariff act of 1897 of artificial horsehair, are stated in the opinion.

*Mr. Assistant Attorney General Wemple,* with whom *Mr. Martin T. Baldwin, Special Attorney,* was on the brief, for the United States:

The Government insists that no statutory similitude is

established, and that the merchandise is therefore dutiable under § 6 of the tariff act of 1897 as an unenumerated manufactured article.

The requirements of the similitude clause of § 7 are satisfied if there be shown a proper similarity in any one of the four particulars, "material, quality, texture, or use," named in that clause.

Artificial horsehair is made out of cellulose, which, when prepared for manufacture, is wholly wanting in all the quality and texture of the waste cotton which was chemically reduced to obtain it. This cotton waste probably never existed as cotton yarn at any time. By not even the most distant analogy can similitude to cotton yarn in either quality or texture be asserted, and the importers have not heretofore made any claim of similitude in either quality or texture. The court below based its decision entirely upon an assumed similitude of artificial horsehair to cotton yarn in the other two statutory particulars, material and use. The only question before this court is the correctness of the decision of the court in defining a legally recognizable similitude in material and in use, and in applying its definition to the facts in the case.

Statutory similitude has been held to be a *substantial* similitude in one or more of the particulars mentioned in § 7 of the tariff act of 1897. *Arthur* v. *Fox*, 108 U. S. 125, 128; *Stuart* v. *Maxwell*, 16 How. 150, 162; *Murphy* v. *Arnson*, 96 U. S. 131, 133; *Pickardt* v. *Merritt*, 132 U. S. 252, 259.

Substantial similitude in material with cotton yarn is not established. If the particular importation had happened to consist of imitation horsehair whose source was wood pulp instead of cotton waste, the difference would have been in fact no greater than it is now.

The resulting product no longer consists of cotton, and is not entitled to be considered in any legislative sense a "manufacture" of cotton. *Meyer* v. *Arthur*, 91 U. S.

570, 576; *United States* v. *Proctor*, 145 Fed. Rep. 126; *Hardt von Bernuth* v. *United States*, 146 Fed. Rep. 61.

Substantial similitude in use is not established. Similitude to cotton yarn in general must be established; that is, it must be shown that the ordinary use of both artificial horsehair and cotton yarn is to effect in a particular manner or process the same concrete result. This is a proposition which argues itself; the statement of it satisfies at once the reasoning faculty. That thing has not been done in the case at bar. *Patterson* v. *United States*, 166 Fed. Rep. 733; *United States* v. *Rheims*, 175 Fed. Rep. 778.

In order to invoke similitude, it must be substantial, and it must be a lawfully recognizable similitude, a similitude to the very merchandise directly enumerated in the act, not a mere subdivision or a casual, special, or, as here, advanced form thereof.

*Mr. Wade H. Ellis*, with whom *Mr. John A. Kratz, Jr.*, was on the brief, for respondent:

The question of the similitude is one of fact. *Erhardt* v. *Steinhardt*, 153 U. S. 177; *Herman* v. *Arthur's Executors*. 127 U. S. 363, 370; *Wills* v. *Russell*, 100 U. S. 621.

The Government is asking this court to reverse the action of a court below based upon a question of fact; judgment based upon such finding will not be reversed unless there is no evidence to sustain it.

Similitude does not mean identity. If it did, then it would never be effective. *United States* v. *Roessler*, 137 Fed. Rep. 770. See also on this point and that of substantial similitude: *Greenleaf* v. *Goodrich*, 101 U. S. 278, 283; *Fisk* v. *Arthur*, 103 U. S. 431; *Arthur* v. *Fox*, 108 U. S. 125; *Pickhardt* v. *Merritt*, 132 U. S. 252; *Stuart* v. *Maxwell*, 16 How. 150; *Mandell et al.* v. *Seeberger*, 39 Fed. Rep. 760; *In re Herter Brothers*, 53 Fed. Rep. 913; *United States* v. *Dana*, 99 Fed. Rep. 433; *Hahn* v. *United States*, 100 Fed. Rep. 635; *Tiffany* v. *United States*, 112 Fed. Rep. 672; *In*

*re Guggenheim Smelting Co.,* 112 Fed. Rep. 517; *Waddell & Co.* v. *United States,* 124 Fed. Rep. 301; *Rich* v. *United States,* 176 Fed. Rep. 732.

The evidence establishes that substantial similitude exists as to use to cotton yarn. *Downing* v. *United States,* 109 Fed. Rep. 885; T. D. 20556; G. A. 4334, Jan. 16, 1899.

The evidence establishes that substantial similitude exists as to material to cotton yarn.

The *Proctor, Patterson* and *Rheims Cases* cited by the Government do not apply.

The merchandise is a yarn commercially.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This suit concerns the correct classification, under the tariff act of July 24, 1897, c. 11, 30 Stat. 151, of artificial or imitation horsehair, imported by the respondent into the port of New York on October 5, 1904.

Artificial or imitation horsehair is made from cotton waste by two processes, the Fremery and the Chardonnet. By the first process, referred to in the opinion of the Circuit Court of Appeals for the Second Circuit in *Hardt von Bernuth* v. *United States,* 146 Fed. Rep. 61, the cotton waste is dissolved in a solution of cup-ammonium, a salt of copper and ammonia, and this solution is forced through fine openings, discharging into a bath of acetic acid, forming threads of cellulose. By the second process the cotton waste, or raw cotton, is at first turned into gun cotton. This gun cotton is then mixed with alcohol and ether, and dissolved into a liquid, and this liquid is forced by pressure through pipes, at the end of which there are a number of small openings. The material is subsequently subjected to a process which it is not necessary to describe.

In the manufacture under both processes the single filaments are not allowed to solidify, although they are made

to stick together, whereas in the manufacture by the like process of artificial silk the fine filaments are grouped and twisted together and solidified. The imitation horsehair is usually dyed black, imported in skeins and sometimes on spools.

Imitation horsehair is not expressly mentioned in the Tariff Act of 1897, probably because it was not commercially known when the act was passed.

The provisions of the act of 1897 which are required to be considered in the determination of the question to be decided, briefly, are these, viz: § 6, providing for duty on non-enumerated articles; § 7, the "similitude clause;" paragraph 302, the cotton yarn clause, and paragraph 385, the silk yarn clause.

The goods were classified by the collector at the port of New York as "similar" to silk yarn, and reference was made to prior decisions, viz: G. A. 4939, 5081 and 5257. Duty was collected at the rate of "30 per centum ad valorem, under paragraph 385, the silk yarn provision, as a result of applying section 7 of the 'similitude clause.' The importer protested, claiming the merchandise to be dutiable at the rate provided by paragraph 302, by similitude to cotton yarn, or at the rate of 20 per cent. under section 6, as a non-enumerated manufactured article."

Before the Board of General Appraisers testimony was seemingly directed on the part of the importers to establishing that the material was, and on the part of the Government that it was not, a yarn. On June 22, 1906, the board reversed the action of the collector and sustained the alternative claim of the importers that the merchandise was dutiable as a non-enumerated manufactured article under § 6. G. A. 6387, T. D. 27442. It is worthy of remark, however, that pending the hearing before the board the Secretary of the Treasury, in Treasury Decisions 27350, May 15, 1906, directed collectors of customs that duty should be assessed on imitation horsehair as a non-

enumerated manufactured article at the rate of 20 per centum ad valorem under § 6.

By appropriate proceedings Eckstein, the respondent here, invoked the exercise of jurisdiction by the Circuit Court for the Southern District of New York for the review of questions of law and fact involved in the decision of the Board of General Appraisers, and in that court contended that the merchandise was a yarn and was by similitude dutiable under paragraph 302 as a cotton yarn. The court, after hearing additional testimony, decided that the merchandise was not yarn, *could not* by similitude be assessed as cotton yarn or yarn of any other kind, and that the board properly assessed it under § 6 as a manufactured article not otherwise provided for. 160 Fed. Rep. 287.

The Circuit Court of Appeals (167 Fed. Rep. 802) reversed the judgment, and held that the merchandise should be classified under § 7 of the act as a non-enumerated article similar to cotton yarn, and the duty should be assessed under the paragraph (302) relating to cotton yarn. Referring to its previous opinion in the *Bernuth Case,* already referred to, wherein it was held that artificial silk, which, as we have already said, is made by similar processes, should be so classified, the court said (p. 803):

"The judge of the Circuit Court affirmed the government's classification, distinguishing that case on the ground that artificial silk was found to be a yarn, whereas artificial horsehair, being solid, and not composed of twisted or spun filaments, is not a yarn. Admitting that this is so, still artificial horsehair is like cotton yarn in material, each being composed almost entirely of cellulose, and like it in use, being largely used as glazed cotton is in making hat braids, shoe laces, binding braids, tapes, and imitation horsehair. We think these resemblances establish its similitude to cotton yarn, even if the texture of the two articles is different."

This writ of certiorari was thereupon allowed.

The question is simply this: Did the Circuit Court of Appeals properly classify the merchandise?

The portion of § 7, the similitude clause of the act of 1897, with which we are concerned, is as follows:

"Section 7. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this Act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned;

In the brief for the Government it is said: "It is well established that the requirements of the similitude clause of section 7 are satisfied if there be shown a proper similarity in any one of the four particulars, material, quality, texture or use," enumerated in the section. *Arthur* v. *Fox*, 108 U. S. 125.

As said by the Circuit Court of Appeals for the Second Circuit, in *United States* v. *Roesseler*, 137 Fed. Rep. 770, 773, "It must be borne in mind that the statute does not require identity; if that were necessary the statute would have no raison d'être."

The decision of the Board of General Appraisers and of the Circuit Court were placed upon the ground that the merchandise produced by a chemical process was not structurally a yarn, such as is produced by the mechanical process of spinning. It was not, by either the board or the court, found that there was no substantial similarity to cotton yarn in material or use. We think the evidence justifies the contention of counsel for the importer that commercially the merchandise is a yarn. As we have before said, the Government originally contended that it was a yarn, and it is reflex significance that in the Tariff Act of 1909 (August 5, 1909, 36 Stat. 11, 60, c. 6) special provision is made for these things in paragraph 405, as for "yarns, threads, filaments of artificial or imitation silk, or

of artificial or imitation horsehair, by whatever name known, and by whatever process made." But assuming, for argument sake, as did the Circuit Court of Appeals, that the merchandise is not a yarn, let us consider, even if the texture of the articles be different, whether it was correctly held that the similitude to cotton yarn was established because "artificial horsehair is like cotton yarn in material, each being composed almost entirely of cellulose, and like it in use, being largely used as glazed cotton is in making hat braids, shoe laces, binding braids, tapes, and imitation horsehair."

*As to material:* Respondent does not claim similarity between the merchandise in question and cotton because cellulose is found in each; the contention is that there is similarity in material because the proportion of the ingredients—cellulose, water, etc.—is the same in the merchandise in question as the proportion of the same ingredients in cotton. Counsel say, and the contention is, we think, supported by the evidence:

"The goods are made of cotton fibres. Cotton consists of pure cellulose with a small percentage of hydroscopic water. The merchandise in suit is pure cellulose with a small percentage of hydroscopic water. It differs only from the cotton fibre in that the cell structure has been broken down. Other than this, cotton and the merchandise in suit are identical in material. No element is found in cotton which is not present in this merchandise; no element is in this merchandise which is not found in cotton, and the proportion of elements in both is approximately the same."

*As to use:* Paragraph 302 of the act covers cotton yarns regardless of their use. Thus, yarns have four broad, general uses, viz: knitting, weaving, sewing and braiding, and manifestly a given cotton yarn could not be used for all the purposes of all cotton yarns. In the group of hard twisted yarns is found cotton yarn, used in the production

of hat braids, and in the same commercial group appears the merchandise in suit. One of the many varieties of cotton yarn used in making hat braids is what is known as glazed or polished cotton yarn. It is asserted and not denied that such merchandise has been uniformly classified for customs purposes as a cotton yarn, and so far from being a highly specialized and unusual commodity, it has been an important article of commerce for at least thirty years. However, while imitation horsehair is generally used in the production of hat braids and is used interchangeably with glazed cotton yarn for such purpose, it has, in common with cotton yarns, other uses, which are referred to in the opinion of the Circuit Court of Appeals.

Upon the whole, we are of opinion that both as to material and use there is a substantial statutory similitude between cotton yarns enumerated in paragraph 302 and the merchandise in question, both as to material and use. As the requirement of the statute is not that there shall be similarity in all of the four particulars enumerated in § 7, but a substantial similarity in one of those particulars may be adequate, the classification adopted by the Circuit Court of Appeals was proper, and its judgment is therefore

*Affirmed.*