CORPORACION ARGENTINA DE PRODUCTORES DE CARNES v. UNITED STATES (No. 4361)[1]

[1] C. A. D. 204.

United States Court of Customs and Patent Appeals, March 30, 1942

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for appellant.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument December 2, 1941, by Mr. J. Bradley Colburn and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, overruling the protest whereby importer sought recovery of certain duties assessed and collected at the port of New York upon imported merchandise consisting of dog food.

The collector classified the merchandise under paragraph 1558 of the Tariff Act of 1930, as an unenumerated manufactured article, assessing duty at the rate of 20 per centum ad valorem. The claim of the importer is that it is properly classifiable under the mixed feeds provision of paragraph 730 of the act with a duty rate of 10 per centum ad valorem, paragraph 1559, the similitude paragraph, being invoked.

The pertinent portions of the respective paragraphs read:

PAR. 1558. That there shall be levied, collected, and paid on the importation * * * all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 730. * * * mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feed-stuffs, 10 per centum ad valorem.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the.particulars before mentioned * * *.

On the trial below, a one-pound tin can containing a sample of the involved merchandise was introduced in evidence as appellant's exhibit 1, and it was stipulated by counsel for the parties that the contents of the can are as stated on the label; to wit, "80 per cent beef cubes and stock, 5 per cent carrots, 5 per cent spinach, and 10 per cent bone meal, and that there is no cereal or grain product contained in the can." Also admitted in evidence as exhibits 2 and 3, respectively, were certain rulings of the Bureau of Customs, circulated for the information of customs officers, through the Customs Information Exchange, relative to the classification of dog food which contained substantial percentages of cereal ingredients along with meats or meat products, bone meal, salt, and water, the rulings being that such dog foods were properly classifiable directly under the mixed feeds provision of paragraph 730, *supra*. These were recited in the decision of the trial court and the court also cited its decision in the case of *Robert F. Byrnes* v. *United States*, Abstract 42989, 4 Cust. Ct. 362, wherein it was said:

It was established that the dog food in question contains a substantial quantity of grains with other feedstuffs prepared ready for use as a feed for dogs and is not a material used in making feeds. The claim at 10 percent under paragraph 730 was therefore sustained.

The merchandise involved in that case had been classified by the collector, as was the instant merchandise, under paragraph 1558, *supra*.

The gist of the trial court's decision in the instant case rejecting importer's contention as to the applicability of the similitude provision to the involved merchandise is expressed in the following paragraphs:

In providing for a duty of 10 per centum ad valorem upon mixed feeds, paragraph 730 defines the same as "an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feedstuffs." Manifestly, it was the intention of Congress that the "mixed feeds" so provided for should contain grain or grain products as one of the ingredients. The dog food before us admittedly does not contain any grain products. All of the ingredients therein consist of "other feedstuffs." The words "other feedstuffs" clearly exclude grain or grain products. We are therefore of the opinion that Congress did not intend to bring within the terms of paragraph 730 any merchandise which failed to contain grain or grain products.

Dog foods containing grain or grain products have been held properly dutiable as mixed feeds, see *Byrnes* v. *United States*, Abstract 42989. The plaintiff herein has established that the particular dog food in question is similar in quality, texture, and the use to which applied, but when the statute expressly prescribes a duty for material, when it is in a certain condition, it must be taken to preclude the application of the similitude statute to the same material when not in that condition. See *Schoenemann* v. *United States*, 119 Fed. 584, where such rule was applied and later adopted by our appellate court in the case of *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110.

This court's decision in the case of *Akawa, Morimura & Co.* v. *United States*, 11 Ct. Cust. Appls. 418, T. D. 39432, was also cited.

It will be observed that the trial court made it clear that, in its opinion, the only mixed feeds which Congress intended to bring within paragraph 730, *supra*, are feeds which contain grain or grain products as a part of the mixture. To state the matter differently, the court held, in effect, that under a proper construction of the paragraph the application of the similitude paragraph to mixed feeds is excluded. This would necessarily be true because, under the rule laid down by that court, any mixed feed would have to contain grain or grain products in order to obtain classification under paragraph 730, *supra*, and such mixed feeds, if the department's ruling above referred to and the decision of the court in the *Byrnes* case, *supra*, are followed, would be classified under paragraph 730, *supra*, directly—not by similitude.

The importance of the question involved in the trial court's ruling is obvious. The principle embraced therein, if strictly followed, is likely to affect administrative procedure under various paragraphs of the tariff act where questions arise with respect to the proper classification of well-nigh innumerable nonenumerated articles of different types and classes.

Fortunately, there are many authorities to guide us in arriving at a conclusion. The similitude rule, substantially as we have it here, has been statutorily provided in tariff acts for practically a century. In the case of *United States* v. *M. Rice & Co. et al.*, 257 U. S. 536, 539, which arose under the 1913 tariff act, the Supreme Court said:

The protest and similitude clauses have appeared in all tariff acts since 1842 in substantially the same form as in paragraph N and paragraph 386 of the Tariff Act of 1913 * * *.

We may say that the similitude provision appeared in the Tariff Act of 1922, as paragraph 1460. The provision (which, in the *Rice & Co.* case, *supra,* was defined by the Supreme Court as a rule of construction) has been the subject of judicial construction in a large number of cases—constructions by the Board of General Appraisers, now the United States Customs Court, and by the latter; by United States Ciruit Courts of Appeals; by this court, and by the Supreme Court of the United States. It is unnecessary to review or even to name all of those decisions here. Taken together, they present a consistent line of holdings applied to the different statements of fact which have been presented—the question of similitude as to "material, quality, texture, or the use," being primarily one of fact but, to quote further from the decision of the Supreme Court in the *Rice & Co.* case, *supra,* "one not very different from that involved in the classification of articles within the specific description of the paragraph." In the case of *Nevin* v. *United States,* 5 Ct. Cust. Appls. 423, 424–5, T. D. 34945, involving viscose bottle caps, this court said:

The conclusion of the board [now the United States Customs Court] that there is no direct provision of the tariff law applicable to the merchandise and that the similitude provision is the one applicable is a decision of a question of law. United States *v.* Hahn (91 Fed., 755), Hermann *v.* Arthur's Executors (127 U. S. 363).

In the *Rice & Co.* case, *supra,* the Supreme Court said:

The part of paragraph 386 under consideration prescribes a rule of construction applicable to every paragraph of the tariff, imposing duty on specifically described articles. It is a general provision intended to enlarge the scope of each paragraph to include articles not specifically described but resembling articles specified.

By the various judicial decisions numerous principles of law respecting the similitude rule have been long established. The following are pertinent:

(A) The similitude act applies only to nonenumerated articles. *Arthur* v. *Sussfield,* 96 U. S. 128; *Moscahlades Bros.* v. *United States,* 13 Ct. Cust. Appls. 633, T. D. 41482, citing *United States* v. *Stouffer Co.,* 3 Ct. Cust. Appls. 67, T. D. 32351.

(B) The similitude provisions of tariff acts take precedence over the noncnumerated provisions. "If an article is found not enumerated in the tariff laws, then the first inquiry is whether it 'bears a similitude, either in material, quality, texture, or use to which it may be applied, to any article enumerated * * * was chargeable as [sic] with duty.'" *Arthur* v. *Fox,* 108 U. S. 125, 128. See also *United States* v. *Rice & Co., supra.*

(C) The similitude provision does not require identity. "It must be borne in mind that the statute does not require identity; if that were necessary the statute would have no ,raison d'être." *United States* v. *Eckstein,* 222 U. S. 130, 136. *United States* v. *Conkey & Co.,* 12 Ct. Cust. Appls. 552, T. D. 40783.

(D) The similitude clause does not require that the resemblance should be in all four of the particulars mentioned—material, quality, texture, and use—a substantial similarity in one of those particulars being adequate. *United States* v. *Eckstein, supra; Hartmann Trunk Co.* v. *United States,* 27 C. C. P. A. (Customs) 254, 259, C. A. D. 95.

Practically all the foregoing cited cases contain citations to previously decided controversies. We have selected from the long list of cases examined those which seemed most directly applicable to the particular rule stated.

It seems to us that the primary question to be determined here is one of law involving the construction of the mixed feeds provision of paragraph 730, *supra,* the question being (to paraphrase an expression of this court in the *Nevin* case, *supra*), whether the language "mixed feeds, consisting of an admixture of grain or grain products with * * * other feed stuffs," is such a term of limitation as *ex vi termini* excludes classification by similitude thereunder of all articles not within its literal terms.

We regard as probably the most comprehensive of the decisions examined respecting that question so stated, the decision of this court in the case of *Strauss & Co.* v. *United States,* 2 Ct. Cust. Appls. 203, T. D. 31946 (21 Treas. Dec. 378), the opinion being by the late Associate Judge Smith. The case arose under the 1909 tariff act and involved a provision similar in all material respects to paragraph 730, *supra.* The merchandise consisted of combs made of gallilith, "a product of sour milk," and various of the principles hereinbefore stated respecting the similitude clause were therein stated and applied.

The combs there at issue were classified by the collector under the language of paragraph 463 of the 1909 tariff act reading, "* * * combs, composed wholly of horn, or composed of horn and metal, * * *" the collector applying the similitude provision which in that act was contained in paragraph 481. The importer claimed classification under the nonenumerated paragraph (in that act) 480. So the courts had there contesting provisions analogous to those here involved, the position of the respective parties in the respective cases being reversed as to their claims.

In discussing the immediate question of exclusion from classification by similitude by reason of the express language of the comb paragraph there involved, it was said in the decision:

Combs manufactured from gallilith have, of course, the same identical use as combs made from any other material, and in style, shape, and appearance, as shown by the samples in evidence, they are very similar to combs made of horn, in fact "just like them," as stated by one of the witnesses. With this as the evidence, and as neither gallilith combs nor manufactures of gallilith were specially provided for in the tariff act of 1909, under which the importation was made, the board held that the goods were similar in use to the horn combs for which special provision was made in paragraph 463 and, therefore, dutiable under that para-

graph by similitude. Counsel for the importers urge that paragraph 481 is not applicable to the goods in question and that they cannot be made dutiable by similitude under the last clause of paragraph 463 for the reason that that clause is restricted to combs composed wholly of horn or horn and metal and therefore explicitly excludes all other combs from its provisions. The difficulty with this contention is that counsel has assumed that an express designation of a particular article is the same thing as an express exclusion of all others. If paragraph 463, under which the merchandise was assessed for duty, excludes all combs other than those mentioned therein, it must be held to do so, not by reason of express language to that effect, but because the specific designation of a particular article implies a legislative intent to exclude all others in the absence of any provision of law otherwise directing. The law, however, under which the goods were imported contains an express statutory declaration which does not permit of that implication, and the distinction between an implied exclusion and an express exclusion, ordinarily of little consequence, must be fully respected if effect is to be given to paragraph 481, a very important provision of the tariff act.

The pertinent parts of the similitude paragraph were then quoted, and the court continued:

This provision specifically requires that imported articles which *are not enumerated* shall bear the same duty as articles which *are enumerated,* provided the former be similar to the latter either in material, quality, texture, or use. Such a requirement is wholly irreconcilable with the proposition that the duty imposed in some other part of the statute on a commodity therein specifically designated was intended by the legislature to apply to that commodity and no other. Of course, if Congress had provided in paragraph 463 for combs made of horn or of horn and metal, but not of gallilith, such a provision would have expressly excluded gallilith combs from that paragraph and made the similitude clause of paragraph 481 inapplicable to the goods under consideration. Not having done so, however, we can not imply that such was its intention in the face of an expressed direction that nonenumerated articles shall carry the same duty as the enumerated articles which such nonenumerated articles most resemble either in material, quality, texture, or use. [Italics quoted.]

This court has never departed from or modified in any respect the rule thus stated. Upon the contrary, it has been accepted and followed as controlling in various cases. See, for example, *Nevin* v. *United States, supra,* and *Ungerer & Co. (Inc.)* v. *United States,* 15 Ct. Cust. Appls. 279, 283–4, T. D. 42469, in which latter case we said:

The application of the similitude provision is subject to the rule that a paragraph may clearly indicate an intent that nothing shall, by similitude, be dutiable thereunder. Such exclusion, however, will not be assumed or implied from either an *eo nomine* or a descriptive provision, but there must be express language of exclusion, or a condition tantamount to the same. *Strauss* v. *United States,* 2 Ct. Cust. Appls. 203; *Nevin* v. *United States,* 5 idem. 423.

With respect to the case of *Schoenemann* v. *United States,* 119 Fed. 584, and the case of *Fensterer & Ruhe* v. *United States,* 1 Ct. Cust. Appls. 93 T. D. 31110, cited by the trial court in support of its views, it may be said, first, that they were decided prior to the decision in the *Strauss & Co.* case, *supra,* and second, that they were referred to in

the latter decision and, we think, properly distinguished from the latter case in the following statement:

It is true that the similitude clause can not be applied to articles which are the same as the enumerated article and which are identical with the latter in material. Such articles are the same and not of a similar kind. The similitude clause is intended to apply only to articles which are different and distinct from the enumerated article, and the duty specifically attached to an article by reason of an improved condition which does not change its essential characteristics can not be affixed by similitude to the same article when not in that condition. So shells washed and cleansed of dirt and animal matter are not *similar* to "shells engraved, cut, ornamented or otherwise manufactured." Schoenemann *v.* United States (119 Fed. Rep., 584, 586). Bisque wares are not *similar* to "bisque wares if painted, tinted, stained, enameled, printed, gilded, or otherwise decorated or ornamented in any manner." Fensterer *v.* Ruhe (T. D. 31110). The principle that an article can not be made dutiable by similitude to the same article, made of the same material, in a more advanced stage of manufacture, has no application here, however, for the reason that while horn combs and gallilith combs are both combs, they are not combs made of the same material and are therefore distinctly different articles. [Italics quoted.]

In the case of *Akawa, Morimura & Co.* v. *United States*, 11 Ct. Cust. Appls. 418, T. D. 39432, also cited by the trial court, it was held that certain straw rugs were, *by reason of a statutory definition* of the terms "grass" and "straw" expressly excluded from paragraph 368 of the 1913 tariff act and, by reason of that express exclusion, might not be classified thereunder by similitude. There was nothing in that decision inconsistent with the ruling in the *Strauss & Co.* case, *supra*, and we fail to see the application of the *Akawa, Morimura & Co.* case, *supra*, to the question of law involved in the instant controversy.

In the main, the various cases cited by the Government involved questions of fact as to similitude of various classes of merchandise. We find no decision upon any questions of law which is inconsistent with the rules of law that we have stated and discern no occasion for reviewing all the cited cases in detail.

Although it is clear that the provision for mixed feeds contained in paragraph 730, *supra*, is limited to such feeds as consist of an "admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feed stuffs," and that the involved merchandise is not dutiable directly under that provision (*United States* v. *F. W. Myers & Co., Inc.*, 29 C. C. P. A. (Customs) 34, C. A. D. 168), we find nothing therein to indicate that the Congress intended to exclude therefrom such mixed animal feeds as were substantially similar in material, quality, texture, or use to those specially provided for in that paragraph. We conclude, therefore, that the trial court erred in holding that the similitude provision was not intended by the Congress to apply to the mixed feeds provision contained in paragraph 730, *supra*.

The question which remains to be determined is one of fact; namely, has appellant established by the evidence of record that the involved merchandise is substantially similar in material, texture, quality, or use to the mixed feeds provided for in paragraph 730, *supra*?

But one witness, Carlo Garcia-Mata, manager of appellant's New York office and its packing house in Argentina, testified for appellant. No witnesses were called by the Government.

As hereinbefore noted, it was stipulated by counsel for the parties that the involved merchandise contains "80 per cent beef cubes and stock, 5 per cent carrots, 5 per cent spinach, and 10 per cent bone meal," and that it does not contain grain or grain products.

Appellant's witness testified that the involved merchandise is not fit for human consumption because, as he stated, "we put bone meal in it"; that it is a dog food and has no other use; that it is a product ready for use, and is used, in its imported condition. He further testified that a dog food consisting of approximately "Meat products, 50.8 per cent; bone, 15.2 per cent; cereal, 8.6 per cent; *and a quantity of water added*" [italics ours] was "the regular type of dog food in the trade." When asked on direct examination how the use of such dog food compared with the use of the involved dog food, the witness replied.

It is exactly the same as other dog food. The percentage of cereal in other dog foods is very small. I know of a dog food that has only 9 per cent of cereal, and they sell that product to exactly the same type of trade that they sell this same product. They bring the two types of dog food more or less to the same trade. Some people like a little more cereal as a binder—cereal is binding; it binds the materials together—while other people are more skeptical of the amount of meat in the can, and they want to see it, so they prefer small cereal so the meat will open up, and they will see the meat. Furthermore, some people like to give to their dogs dog biscuits. Therefore, those people don't need any cereal in their meats, because the dog is chewing biscuits all day, so they prefer this type of dog food; and it is absolutely interchangeable, it is immaterial. Most people really don't care because the percentage is very small, only 8 per cent in a 100 per cent product.

The witness further testified that a dog food conforming to the analysis hereinbefore set forth, that is, "Meat products, 50.8 percent; bone, 15.2 per cent; cereal, 8.6 per cent; and a quantity of water added" is used in the trade in exactly the same manner as is the involved dog food. When asked whether he was familiar with a dog food sold in the markets of the United States having the following analysis: "15.6 per cent dry cracked wheat and barley; 10.5 per cent dry meat or meat products; 71.4 per cent water; and 2.5 per cent bone meal, and salt," the witness replied that he was and that the use of such dog food was exactly the same as that of the involved

dog food. On cross-examination, the witness testified, in part, as follows:

A. The different quality of dog food doesn't depend on the amount of cereal. The different quality depends on the amount of meat, and there are high-class dog food products that have 85 per cent cereal, I mean 85 per cent meat, like this one, but also have cereal. That product is exactly in the same class as this. product; and I bring that product, too, and I sell it at the same price as this one, exactly the same product, I mean, exactly the same type of trade, while a cheap dog food with only 15 or 20 per cent of cereal will retail at 5 cents a can in the grocery stores, and that is a different——

Judge Evans. 15 per cent meat, you mean?

The Witness. 15 per cent meat, yes. *The amount of cereal, you see, is not the factor that makes the quality, because it isn't as expensive as the meat.*

By Mr. Donohue.

X. Q. I see. The cereal is sometimes used as an adulterant to——A. No, the cereal is a binder; it is a filler. It gives roughage, but the protein it contains comes from the meat. So the cereal is immaterial in the trade. *The trade considers quality in per cent of your meat. But they could have 10 per cent of cereal, it really doesn't make any difference, because it is just a binder.* [Italics ours, except that designating characters.]

It will be observed that the witness stated that the cereal used in dog food was used as a binder or filler; that it gave roughage; that the meat in dog food provided the protein content; that it was immaterial "in the trade" whether or not dog food contained cereal; and that the quality of a prepared dog food depended on the meat content. In other words as we understand it, the witness testified that bone meal was added to the involved dog food to make such food unfit for human consumption; that the use of cereals in dog foods is immaterial and of no importance "in the trade"; and that the quality of dog food depends upon the meat content. Nevertheless, the witness stated that dog food such as that here involved, containing 80 per centum beef cubes and stock, is used in the trade exactly the same as is a dog food containing 50.8 per centum meat or meat products, or one containing only 10.5 per centum dry meat and meat products, or one containing 85 per centum meat. Furthermore, although the involved dog food is composed in part of carrots and spinach—5 per centum of each—no explanation was offered by the witness as to what purpose, if any, they served. It is evident from what has been said that it cannot be held that appellant has established that the involved dog food is substantially similar in material, quality, or texture to any of the articles provided for in paragraph 730, *supra.*

Appellant's witness testified that the various dog foods referred to in his testimony, including the dog food here involved, are fed to dogs. However, the mere fact that the involved dog food and other dog foods containing a small percentage of grain or grain products are

used as dog foods does not establish that the use of the involved dog food is substantially similar to the use of dog foods containing grain or grain products, even if it be assumed that dog food containing a small percentage of grain or grain products (which grain or grain products the witness stated were not of importance "in the trade") were intended by the Congress to be specially provided for under the provision for mixed feeds contained in paragraph 730, *supra, Lang.* v. *United States*, 4 Ct. Cust. Appls. 129, T. D. 33394. Nor is there any evidence of record that the involved dog food has substantially the same nutritive value, or that it produces substantially the same results, as any of the mixed feeds specially provided for in paragraph 730, *supra.* See *Murphy* v. *Aranson*, 96 U. S. 131; *Pickhardt* v. *Merritt*, 132 U. S. 252, 258, 259; *Lang* v. *United States, supra.* We are unable to hold, therefore, on the record presented, that the involved dog food is dutiable under paragraph 730, *supra*, by virtue of the similitude provision contained in paragraph 1559, *supra.* Accordingly, although we are not in harmony with the views expressed by the trial court, the judgment must, for the reasons hereinbefore stated, be *affirmed.*

#### CONCURRING OPINION

LENROOT, Judge, specially concurring:

I concur in the conclusion reached by the majority. I agree that, if the similitude clause is applicable to the provision of paragraph 730 here in question, the proof does not establish that the merchandise in question is substantially similar in material, texture, quality, or use, to the mixed feeds provided for in said paragraph 730. However, I cannot agree with the majority that said mixed feed provision is subject to the application of the similitude clause, and I agree with the views expressed by the trial court upon that question.

Inasmuch as it was not necessary to pass upon this question in arriving at the conclusion reached by the majority, I will not here discuss the question of the applicability of the similitude clause to said provision, but will merely state that in my opinion the language of said mixed feed provision is tantamount to an express exclusion of merchandise such as is here in question from said mixed feed provision of paragraph 730. If this be correct, under the decision in the case of *Ungerer & Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 279, T. D. 42469, the similitude clause is not applicable to said provision.