PITTSBURGH PLATE GLASS CO. *v.* UNITED STATES (No. 587).[1]

1. CUSTOMS USAGE.

It is only in a case where there is a doubt as to the meaning of the statute itself that the usage of the customs may be held to determine the construction of that statute.

2. SIMILITUDE CLAUSE.

That the article here contains no wool must be assumed, but it appears certainly to be felt, and since its use is substantially the same with woolen felt, there being shown a similar though not identical use, it is dutiable under the similitude clause, tariff act of 1909.—United States *v.* Roessler (137 Fed. Rep., 770).

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers; G. A. 7157 (T. D. 31253).

[Affirmed.]

*Sidney G. McKay* and *Clarence M. Brown* for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise consists of a mat of unwoven hair, alleged to be composed in part of wool. It was returned for duty as "unwoven

---

[1] Reported in T. D. 32162 (22 Treas. Dec., 48).

felt in part of wool," at 44 cents per pound and 60 per cent ad valorem under the provisions of paragraph 382 of the tariff act of 1909, which, in so far as pertinent, reads:

382. * * * Felts not woven, and not specially provided for in this section, composed wholly or in part of wool, the duty per pound shall be four times the duty imposed by this section on one pound of unwashed wool of the first class, and in addition thereto sixty per centum ad valorem.                                    \

The importer claims the merchandise properly dutiable at the rate of 20 per cent ad valorem as a nonenumerated manufactured article under the provisions of paragraph 480 of said act, which reads:

480. That there shall be levied, collected, and paid on the importation of all * * * articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

At the different hearings much testimony was introduced and a deposition taken abroad of the manufacturer of the particular merchandise was introduced, all for the purpose of establishing on behalf of the importer, first, that the merchandise was not a felt, and, secondly, that it was not in part of wool. The Government's testimony was directed to the point that the merchandise was in part of wool. The Board of General Appraisers held that the merchandise was a felt made by a secret process, the question of how and by what process it was made being held not material, and that it did not contain wool in any appreciable quantities. The board further held that the merchandise was properly dutiable by similitude per force of paragraph 481 of the tariff act of 1909 to a "felt wholly or in part of wool." The similitude section reads:

481. That each and every imported article, not enumerated in this section, which is similar, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this section as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned. * * *

In the briefs and at the hearing before this court the importer strenuously contended that the undisputed record conduces to the claim that the imported article is not a felt, and that it is in no part of wool. That it is in no substantial part of wool is found by the board, and we think amply sustained by the testimony. That it is or is not a "felt" is a question of more complexity, which was found against the importer by the board upon the facts introduced in the case. Were it an open question with us we might not readily accept the finding of the board upon the testimony adduced. The merchandise, however, was found and returned by the collector to be "unwoven felts." The importer in its protest alleges that the merchandise is "one bale of polishing *felt*, ordinary quality." Almost every witness in the case, called by either importer or the Government, referred to the imported merchandise as a "felt" or "polishing

felt." This is notably true of Mr. S. G. de Kay, counsel for the importer, who took the stand as a witness in its behalf, and who constantly characterized this merchandise as a "felt." The Board of General Appraisers found the same to be a "felt." We therefore feel constrained by this record to assume, for the purpose of decision in this case, that the imported merchandise must be considered a felt.

The importer's allegations in its protest, which are in perfect accord with the return of the collector, constituting the pleadings in the case, would seem to conclude this question.

The importer in his proofs is confined to the allegations of his protests. Arthur *v.* Morgan (112 U. S., 495), Herrman *v.* Robertson (152 U. S., 521), Presson *v.* Russell (152 U. S., 577), Heinze *v.* Arthur's Executors (144 U. S., 28), Battle *v.* United States (108 Fed. Rep., 216).

Upon the facts of the case, therefore, we are concluded by the record, and it must be assumed for the purposes of decision, first, that the imported article is a felt; secondly, that it contains no wool.

It is contended for the Government that the similitude clause controls, in that the use of the imported article is similar to that of felts made wholly or in part of wool, dutiable under paragraph 382 and used solely in connection with plate-glass polishing machines for the purpose of polishing the plate glass.

This contention is controverted by counsel for the importer, who insists that the fact that the merchandise is used to produce identical results does not constitute similitude of use within the provisions of paragraph 481, quoted *supra;* and, secondly, that the long-established customs usage, dating from 1903 until the origin of this controversy in 1910, whereby this merchandise was, during said period, assessed as herein claimed by the importer, should control. We do not think this is a case where the principle of long-established customs usage is determinative. The application of that principle of judicial interpretation confines its exercise to cases wherein there is a doubtful meaning of a statute. In such cases of doubt long-established customs usage may be invoked as determinative of one contention or the other. There is no dubious statute here. The two statutes involved are the one levying duty upon felt articles wholly or in part of wool, paragraph 382, and the similitude clause, paragraph 481, making likewise dutiable any article more similar in quality, texture, material, or use to one dutiable under said paragraph 382 than to any other article covered by the tariff law.

In terms, and as adjudicated, there is no question of doubt attending the language of either of these paragraphs of the law. If there is doubt, it is to the facts constituting or differentiating similitude between the different articles of merchandise. The rule of construction, therefore, has no application.

The sole remaining question is whether or not there is a similitude of *use* between the imported article and felts made wholly or in part of wool. The uncontradicted testimony is that for many years last past there has been, and now is, imported into and manufactured in the United States and known to its commerce an article which concededly is a felt made wholly or in part of wool used solely in connection with plate glass manufacturing operations for the purpose of polishing the plate glass. Invention seems to have improved upon this process and devised what is known as the Belgium plate-glass machines. As a part of these machines as a polishing agency it has been made practical to use a less expensive polishing apparatus, to wit, the imported felts, mats, or whatever the imported articles may be styled. It appears from the uncontradicted testimony in the record that the method of using each of the articles is somewhat different, incident to the difference in the machinery employed, but they are used substantially in the same manner. In the one case motion of a certain direction is had, while in the other motion of a different direction is given. The result in each case is identical, so that it seems to us that the conclusion is inevitable that there is a similitude, though not an identity in the mode of use.

It is pertinent to quote upon the subject of the application of the similitude clause United States *v.* Roessler (137 Fed. Rep., 770).

The counsel for the appellant have taken pains to point out numerous instances wherein the two articles differ, but it must be borne in mind that the statute does not require identity; if that were necessary the statute would have no *raison d'etre*. It is enough if there be a substantial similitude in any one of the particulars mentioned—material, quality, texture, or use. Arthur *v.* Fox (108 U. S., 125).

In Pickhardt *v.* Merritt (132 U. S., 252) the Supreme Court of the United States said, in approval of construction by the lower court, as follows:

* * * The mere application to the dyeing of fabrics would not create the similitude, but that if there was a similitude in the mode of use, a similitude in the same kind of dyeing, producing the same colors in *substantially the same way*, so as to *take the place* of aniline dyes in use, there would be a similitude in use.

So in Murphy *v.* Arnson (96 U. S., 131), in speaking of the application of the similitude clause, the Supreme Court of the United States laid down the doctrine that the similitude "*plainly refers to its employment*, or its effect in producing results."

So, also, in Patterson *v.* United States (166 Fed. Rep., 733), Arthur *v.* Fox (108 U. S., 125), Rosenstern *v.* United States (171 Fed. Rep., 71).

Counsel for the importer has with much force and reason brought to the attention of the board and this court by the record the fact that this conclusion levies a rate of duty of over 400 per cent upon the imported article, which has not been successfully manufactured in the United States. While this is a regrettable result, and one

which calls upon this court, under the decisions of the Supreme Court of the United States (see Kirby *v*. United States, 7 Wall., 486), for an exercise of every legal intendment in avoidance of such a result, this court is nevertheless constrained, by the well-established rules of construction ·adopted by the Supreme Court of the United States and this court in customs cases, to reach the conclusion herein announced. It may be extremely regrettable that the court by the often and well-considered rules of decision is compelled to a conclusion which in this particular instance seems to work a hardship. Nevertheless, it is better to visit that unhappy result in a particular case than it is for a court to assume, in any case whatsoever, to set at naught the well-settled rules of construction and mandates of the statute in order to reach a result however more desirable. The matter then becomes a subject for legislation. Legislation can be neither certain nor effective, nor can the rights and properties of the citizen ever become fixed and certain, except in the presence of strict adherence to the rules of judicial interpretation by the courts.

*Affirmed.*