UNITED STATES *v.* INTERNATIONAL FORWARDING CO. (F. C. TRAVER PAPER CO.) (No. 3273)

F. C. TRAVER PAPER CO. *v.* UNITED STATES (No. 3274)[1]

---

United States Court of Customs and Patent Appeals, April 29, 1930

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for F. C. Traver Paper Co.

[Oral argument April 14, 1930, by Mr. Folks and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

These cases are cross-appeals, the Government being the appellant in No. 3273 and the appellee in No. 3274. They were heard together and may be disposed of in a single opinion.

The merchandise involved consists of a product called "wattoline." It seems to be composed of nine very thin layers of what the Government, in a general way, refers to as crêpe paper and the importer as processed pulp, with a sheet of glassine paper covering the top layer. The sheets have been subjected to a pressure at certain points which results in their being held together without the application of any adhesive material. The nine layers of material constitute the chief value of the article, and the glassine layer is not separately involved in the issue.

The sheets as imported are 24 by 35½ inches in dimension. After being imported they are cut to various sizes and forms and their principal use appears to be as a wadding or padding in the packing of candy in boxes.

The merchandise was classified by the collector as crêpe paper and assessed for duty under paragraph 1304 of the Tariff Act of 1922 at 6 cents per pound and 15 per centum ad valorem. This paragraph reads as follows:

PAR. 1304. Papers commonly known as tissue paper, stereotype paper, and copying paper, india and bible paper, condenser paper, carbon paper, coated or uncoated, bibulous paper, pottery paper, tissue paper for waxing, and all paper similar to any of the foregoing, not specially provided for, colored or uncolored, white or printed, weighing not over six pounds to the ream of four hundred and eighty sheets on the basis of twenty by thirty inches, and whether in reams or any other form, 6 cents per pound and 15 per centum ad valorem; weighing over six pounds and less than ten pounds to the ream, 5 cents per pound and 15 per centum ad valorem; india and bible paper weighing ten pounds or more and less than eighteen pounds to the ream, 4 cents per pound and 15 per centum ad valorem; crêpe paper, 6 cents per pound and 15 per centum ad valorem: *Provided*, That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall pay a less rate of duty than that imposed upon the component paper of chief value of which such article is made.

The importer made protest, claiming the merchandise to be properly classifiable for duty purposes under either paragraph 1303, which reads:

PAR. 1303. Filter masse or filter stock, composed wholly or in part of wood pulp, wood flour, cotton or other vegetable fiber, 20 per centum ad valorem; indurated fiber ware, masks composed of paper, pulp or papier-mâché, manufactures of pulp, and manufactures of papier-mâché, not specially provided for, 25 per centum ad valorem.

or in the alternative under that portion of paragraph 1313, which reads:

* * * manufactures of paper, or of which paper is the component material of chief value, not specially provided for, all the foregoing, 35 per centum ad valorem.

The Customs Court held the merchandise classifiable under the atter paragraph and sustained the protests. Both the Government and the importer thereupon appealed to this court. Here the Government maintains the correctness of the collector's classification and assessment as to all the importations to which the protests relate, while the importer insists upon the applicability of paragraph 1303 in protests 63964–G/68580 and 109913–G/71653. As to protests 86031–G/70311, 97549–G/70744 and 105778–G/71350, importer abandons all claims at 25 per centum ad valorem and accepts the Customs Court's decision.

The merchandise involved in the instant proceedings is agreed to be in all respects similar, for duty purposes, to that which was involved in the case of *Birn & Wachenheim* v. *United States*, decided by the Customs Court (then the Board of General Appraisers) May 21, 1926, T. D. 41595, G. A. 9130, and, upon appeal, by this court, June 26, 1927, 15 Ct. Cust. Appls. 244, T. D. 42244.

In that case the collector classified the merchandise as crêpe paper and assessed duty at 6 cents per pound and 15 per centum ad valorem. Protest was made by the importer, the claims being, as here, under either paragraph 1303, at 25 per centum, or 1313, at 35 per centum. The Customs Court then, as here, held it classifiable under 1313. The Government accepted the decision without appeal after a motion for rehearing had been denied, but the importer appealed and insisted, as it here insists, upon the applicability of paragraph 1303. This court, after thorough consideration, affirmed the judgment of the Customs Court.

In the instant proceedings the Government, as well as the importer, appeals and states in its brief:

In order that the Court might have the fullest information on the subject, the Government made up this case now on appeal, and introduced the testimony of the leading trade and scientific witnesses on the subject throughout the United States.

In this case, as in the *Birn & Wachenheim* case, the Government sought a rehearing in the Customs Court, and here, as there, the motion for same was denied. The record of the *Birn & Wachenheim* case was incorporated and made a part of the record here. The testimony therein covered about 200 printed pages, and that taken in the case at bar covers about 260 printed pages.

In determining the issue we have, in addition to thoroughly examining the testimony in this case, made a complete restudy and analysis of that presented in the *Birn & Wachenheim* proceedings, as well as the decisions therein rendered.

In the former case the importer presented the testimony of eleven witnesses, and the Government examined four in addition to recalling one witness for importer, and, apparently, making him, in a way, its witness. This testimony was in the main directed to the nature and character of the merchandise. One witness for the Government, Mr. J. R. Hecht, who was an examiner attached to the appraiser's stores, port of New York, gave evidence as to the administrative practice in classification, stating that merchandise similar to that in issue had been classified as crêpe paper for a long period of years under different tariff acts.

In the preparation of the instant case, the Government again examined two of its witnesses in the original case, one of whom was Mr. Ernest Mahler, general superintendent of the Kimberly Clark Co., domestic manufacturers of pulp and paper, and the other, Mr. Hecht, who in the meantime had retired from the Government service and accepted a position as customs expert for the import committee of the American Paper Manufacturers. In this case he testified again as to the administrative practice while he was in the Government service and in addition thereto gave evidence, apparently as an expert, touching the nature of the involved merchandise. In addition to these, the Government examined 17 other witnesses, including two Government examiners at the port of Chicago, Messrs. Selden and Luctman, as to administrative practice in classification. Another of the Government's witnesses, Dr. Roman, was a dentist and testified as to the use of certain paper claimed by the Government, as we understand it, to be similar, in a tariff sense, to that involved here. He stated that in his work he used the particular kind of paper about which he testified, on account of its absorbent qualities.

The other witnesses testified as to various phases of the paper industry and business, and as to the nature and characteristics of the merchandise and other merchandise claimed to be similar, in a tariff sense. The testimony covers the manufacturing process or processes, sales, use, the question of tensile strength, compactness, absorbency—apparently the entire field of the industry, in so far as knowledge of it is essential to the determination of the issues involved.

The importer, in addition to relying upon the testimony given by its witnesses in the first case, called ten additional witnesses. The testimony, in its behalf, like that for the Government, covers the field on the several issues involved, except that of administrative practice.

Eight exhibits, forty-seven illustrative exhibits and two exhibits for identification were presented and filed in the instant case. In the original, or *Birn & Wachenheim* controversy, there were, in all, twenty-one exhibits. So we have had before us quite a voluminous and interesting record.

In its decision the Customs Court recited that the precise question "here raised was decided" in the *Birn & Wachenheim* case, and quoted from its own decision in that case as follows:

Considering the record as a whole, we are satisfied that it fairly establishes that the present merchandise is properly classifiable at the rate of 35 per centum ad valorem under paragraph 1313 of the act of 1922 as a manufacture composed in chief value of paper not specially provided for, as alleged by importers.

It then quoted from the opinion delivered by Judge Hatfield, on behalf of our court, affirming the Customs Court decision, wherein it was said:

It may be that the importation is a manufacture of pulp as claimed by the importer; or it may be a manufacture of crêpe or bibulous paper as claimed by the Government. But, after a most thorough and careful study of the evidence, we are unable to reach the conclusion that the decision of the court below, holding that the importation is a manufacture of paper not specially provided for, is contrary to its weight.

The Customs Court then continued in the instant case:

Evidently with a view to clarifying, if possible, the issue, the record in the cited case was incorporated herein, and to its 200 and odd printed pages of testimony have been added the 400 typewritten pages of testimony here taken, as well as numerous exhibits.

But we do not think the desired end has been accomplished, so confusing and conflicting are some of the various statements made by the different witnesses. The only facts which the record seems fairly to establish are that the separate layers in the so-called wattoline constitute the component material of chief value in the article, and that such material consists of a paper which is neither a tissue, a crêpe, nor a bibulous paper, within the common meaning and understanding of those terms. At best, the additional testimony submitted may be regarded merely as cumulative and as establishing no different facts than were found in the decided case above referred to.

This court again finds itself in the situation where we may repeat from our former opinion:

After a most thorough and careful study of the evidence, we are unable to reach the conclusion that the decision of the court below, holding that the importation is a manufacture of paper not specially provided for, is contrary to its weight.

In reaching this conclusion we repeat that we have made a restudy of the former case, including the testimony therein taken and the

briefs therein filed, and have tried to weigh that testimony *de novo* in connection with the additional evidence taken in the instant case, giving due consideration to the training and experience of the witnesses and their possible interest in the result of the case, as disclosed by the record.

The effect of the prior decision and of our affirmance thereof was to hold that the merchandise was not classifiable for duty purposes as "tissue paper," "bibulous paper," nor as a paper "similar thereto"; also that it was not classifiable as "crêpe paper" and that it did not fall within the proviso of paragraph 1304, as an article composed wholly or in chief value of any one of these.

The Customs Court in its decision in the former case set forth at considerable length the testimony of Carl Alexander, the German manufacturer who manufactured the imported merchandise, and that of the witnesses, Chalfant, a paper manufacturer, and Miner, manager of the Dennison Manufacturing Co., asserted by the witness to be the "largest single user of crêped paper not only in this country but in the world," and then added:

Similarly, the testimony of other commercial witnesses for the importers shows that this so-called wadding is *not crêpe paper*. We are satisfied that on this point the importers' evidence preponderates over that introduced herein on behalf of the Government. [Italics ours.]

There were no specific findings as to its not being tissue paper or bibulous paper or paper similar to these, but by classifying the merchandise under paragraph 1313 as "manufactures of paper not otherwise provided for," the effect was the same as if specific findings had been declared.

At page 31 of the record in the instant case we have the statement of Government counsel that its contention is—

Briefly that it is crêpe paper, that it is tissue paper, that it is bibulous paper, specifically mentioned in paragraph 1304 of the tariff act.

We do not think it could be very persuasively argued that the merchandise is "tissue paper" or that it is similar thereto, or, coming to the proviso, that it is "wholly or in chief value" of tissue paper or a paper similar thereto.

It may be here noted that the words "similar to any of the foregoing," appearing in paragraph 1304, are not applicable to crêpe paper which is provided for subsequent to those words. It appears that in order to be classifiable as crêpe paper the material must, in fact, be crêpe paper, and not something simply similar thereto.

We are inclined to the opinion that the Government's strongest argument in the case, so far as the nature of the paper is concerned, is built about the words "bibulous paper." A large portion of its new testimony—that is, the testimony in the preparation of the

instant case—is devoted to showing the highly absorbent qualities of the merchandise, exclusive of the glassine layer. This has been shown by overwhelming evidence; indeed, there is no particular contention on the part of the importer that the material as manufactured, without the glassine layer, is not highly absorbent, but it is insisted that it does not follow from this that the merchandise constitutes the bibulous paper contemplated in the passage of the tariff act.

We think the record in the *Birn & Wachenheim* case justifies the assumption that the absorbent nature of the merchandise, while it may not have been so strongly emphasized then as now, was before the Customs Court at its trial and was considered in its decision. In any event, it was brought very specifically to its attention in the affidavits accompanying the motion for a rehearing and, we must assume, was duly considered by that tribunal along with all other pertinent questions arising in the case. An examination of the briefs filed in this court show that it was embraced in the Government's argument then made before us.

It is true that the Government was not an appellant in that case and was contenting itself with merely upholding the applicability of paragraph 1313 as against the importer's contention for paragraph 1304, and naturally did not present its case upon altogether the same theory as that which is pressed in the instant case, but the word "bibulous" must have had consideration by both the trial court and by us, as our opinion indicates, in the part heretofore quoted.

However that may be, we would not feel justified in reversing the judgment of the trial court by finding from this record that, because that part of the imported merchandise which is independent of the glassine paper is highly absorbent of liquids, it is the bibulous paper contemplated in paragraph 1304.

We think it quite significant that out of all the witnesses in this case, most of whom were experienced in, and familiar with, the paper business in some of its branches, only a few—probably only three—seem to have ever heard of a class of paper known as a bibulous paper. There seems to be no such word commonly used in the paper trade.

In the Tariff Information Surveys, published in 1921 for the use of Congress in the preparation and enactment of the Tariff Act of 1922, it was said:

Bibulous paper is a porous, absorbent paper used for soaking up fluids. Blotting paper is the principal variety of bibulous paper. One kind of tissue paper used for massage purposes is called bibulous tissue paper. * * * Toweling paper partakes of the characteristics both of absorbent or bibulous paper and of tissue paper. * * * ˙ ˙

The terms "bibulous paper" and "pottery paper" are now very little used in the American trade. They are likely to cause confusion in reporting imports.

We should not feel justified in assuming that Congress, in using the three words "tissue," "bibulous," and "crêpe," as applied

to paper, meant to use them interchangeably; it is our assumption that each of the several adjectives used in the paragraph were intended to have and do have a particular and specific descriptive significance, and the fact that a part of the article imported is absorbent does not of itself, we think, render it bibulous in the sense in which that word is used in the act. It seems not improper to note that the article is not utilized for purposes of absorption. The glassine layer is made a part of it largely to prevent the absorption of the moisture contained in the candy in the packing of which the material is used as wadding or padding.

There remain to be considered the questions raised by the Government relative to the applicability in this case of the doctrine of legislative sanction of judicial interpretation, and the matter of administrative practice.

In its decision in the *Birn & Wachenheim* case, the Customs Court stated that its conclusion therein was in conflict with its ruling in G. A. 7456, T. D. 33347, when "we classified as crêpe paper merchandise similar to, if not identical in character, with that here present." That merchandise had been classified by the collector as crêpe paper.

After describing the merchandise involved in T. D. 33347, the opinion stated that "the record in the case was a meager one," and then added relative to the *Birn & Wachenheim* record:

Here, the record seems complete and full as to the fact that this wadding is not a crêpe paper, or anything like what is known as crêpe paper in the trade of this country.

In addition to this case, which appears to have been decided April 15, 1913, having arisen under the Tariff Act of 1909, the Government also brings to our attention another and earlier decision of the Board of General Appraisers (now the Customs Court) rendered July 5, 1905. This was in the case of *Davies, Turner & Co.*, Abstract 7304, 10 Treas. Dec. 20. It arose under the act of 1897. There cellulosewatte was classified by the collector as crêpe paper, and this classification was upheld by the board.

The Government also brings to our notice the testimony relating to the long-continued administrative practice of classifying such merchandise as crêpe paper, and our attention is directed to one of our recent decisions wherein the question of long-established practice was discussed. *United States* v. *Raunheim*, 17 C. C. P. A. 425, T. D. 43867.

The expression of the last-cited reference which appears to us to be most applicable to the case at bar is contained in the statement:

It is a familiar rule that long-established administrative practice is determinative only when the meaning of the statute is doubtful. *Pittsburgh Plate Glass Co.* v. *United States*, 2 Ct. Cust. Appls. 389, T. D. 32162.

It will be noted that in the cases brought to our attention by the Government, and in the administrative practice shown, the classification of the merchandise was as *crêpe paper*. Tissue paper, bibulous paper, and papers similar to these were not involved. The classification was as "crêpe paper" and it was this classification which was sustained. The crêpe-paper clause of paragraph 1304 does not appear to us to be ambiguous and, as we have heretofore pointed out, there is no provision in the paragraph for paper *similar to* crêpe paper.

The court below was most positive in its findings in the *Birn & Wachenheim* case that the merchandise was not crêpe paper. We do not think there is doubt as to the meaning of the statute as regards this article.

We are not, therefore, able to conclude that the doctrine of legislative approval and the proof as to long-continued administrative practice constitute a factor which should control in this case.

The importer has been quite insistent upon its theory that the merchandise involved in protests 63964–G/68580 and 109913–G/71653 should be classified under paragraph 1303 and that the Customs Court was in error in not so holding. We feel as to this contention the same as we feel in regard to that of the Government. The Customs Court manifestly considered this case painstakingly and weighed the testimony with great care. It took the view that "at best, the additional testimony submitted may be regarded merely as cumulative and as establishing no different facts than were found in the decided case above referred to" (the *Birn & Wachenheim* case).

We do not feel justified in holding that the decision is against the weight of the evidence.

The judgment of the Customs Court is, in all respects, *affirmed*.