(C. D. 1190)

ROOVERS BROS., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 1, 1949)

*Eugene R. Pickrell* (*Michael Stramiello, Jr.*, of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: Merchandise described on the invoice as " 'Gloy' C Paste" was classified, by similitude, as a chemical compound, not specially provided for, with an assessment of duty at 25 per centum ad valorem under paragraphs 5 and 1559 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 5 and par. 1559). Plaintiff's principal claims are for classification either directly, paragraph 84 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 84), or by similitude, paragraph 1559, *supra*, as soluble or chemically treated starch, dutiable at 2 cents per pound;

or as a nonenumerated manufactured article under paragraph 1558 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 1558), carrying an assessment of 20 per centum ad valorem. An additional claim, not pressed either at the trial or in the brief, is made under paragraph 83 of the Tariff Act of 1930.

In addition to the testimony of three witnesses, the record also contains a sample of the present merchandise, plaintiff's exhibit 1, consisting of a small glass jar with a substance resembling in appearance ordinary library paste. All of the proof was offered by plaintiff.

Plaintiff imported the present merchandise as an adhesive. Its plant manager for over a period of 5 years used and observed the use by customers of this "Gloy" C paste for its adhesive qualities in packaging cartons and sticking papers or documents together. Concerning the comparability of soluble or chemically treated starch with the imported product, the witness testified that he had made physical tests of both for their adhesiveness and evaporating properties, and "they seemed very similar." He used soluble chemically treated starch "intermittently, over many years," for binding paper together.

The Government chemist, who analyzed the merchandise in question, testified, using her written report, defendant's exhibit 2, that the product contains 20.3 per centum solids and 79.7 per centum water. The solids and their proportionate quantities are: Zinc chloride, 4.4 per centum; calcium chloride, 6.4 per centum; sodium chloride, 0.7 per centum; starch (chemically treated) 4.8 per centum; gum arabic or similar carbohydrate gum, 4 per centum.

The nature and functions of the several components of the paste under consideration were explained by a chemist, testifying for the plaintiff, and his test agreed with the Government's report, defendant's exhibit 2, *supra*. The chemically treated starch and carbohydrate gum impart to the substance its adhesiveness. The zinc chloride and calcium chloride prevent it from jellying and add to its usability.

He defined a chemical compound as a combination of chemical elements in a definite proportion in which the substance has a definite molecular weight and possessed properties separate and distinct from the elements composing it. The merchandise in question is not a chemical compound because its several different components deprive it of a specific or definite molecular weight. Furthermore, the presence of chemically treated starch and carbohydrate gum precludes it from being a mixture of chemical compounds because both are mixtures of components having different molecular weights and therefore neither is a chemical compound. The witness called the imported product "a water solution of chemically treated starch and a carbohydrate gum." His statement that the present merchandise, and chemically treated starch in water solution, could be used for the same purpose, cannot be considered favorably in the light of his admissions on cross-

examination that he never used chemically treated starch and that his experience therewith was limited to a study of technical literature, which, it should be added, was neither produced nor even cited for reference.

At the trial, Government counsel stated that the collector's classification of the present merchandise followed the conclusion reached in a line of cases holding different mixtures of various substances to be chemical compounds, and so classifiable. *B. P. Ducas & Co.* v. *United States*, 4 Treas. Dec. 260, T. D. 22872; *B. P. Ducas & Co.* v. *United States*, 6 Treas. Dec. 344, T. D. 24372; and *Arthur A. Brigham* v. *United States*, 9 Treas. Dec. 65, T. D. 25972. All of said cases arose under the Tariff Act of 1897. The *Ducas & Co.* cases, *supra*, concerned preparations having a substantial content of chemical starch. One product was used for stiffening the backs of corduroys and plushes; the other for filling woolen and cotton fabrics. In the *Brigham* case, *supra*, the merchandise consisted of two varieties of size or finish, composed of chemical starch, zinc, and magnesium chlorides. In all of the cited cases, the merchandise was held to be classifiable as a chemical compound under paragraph 3 of the Tariff Act of 1897.

Government counsel now admits that the three cases, just reviewed, have no application toward determining the present issues. The concessions appear in defendant's brief as follows:

The record herein, *supra*, does not indicate that the merchandise at bar is identical or similar in all material respects to the merchandise involved in the cases cited above. Therefore we do not wish to argue that the ruling set forth in the said cases should be applied and be controlling in the instant case. As a matter of fact the evidence *supra* indicates that the merchandise herein contains components which are not chemical compounds. In view of this situation we feel that we cannot urge that the classification of the merchandise at bar be affirmed. It is our position that the merchandise under consideration is properly dutiable at the rate of 20 per centum ad valorem under the proviso for articles manufactured, in whole or in part, in paragraph 1558, *supra*.

It follows from the foregoing that the classification now sought by the Government is one of the claims made by plaintiff.

Counsel for plaintiff, in his brief, has argued to show that the merchandise in question is not a chemical compound or a mixture of chemical compounds under paragraph 5, *supra*, as classified. In view of defendant's present attitude, virtually abandoning the collector's action as hereinabove set forth, it becomes unnecessary to discuss the correctness of the official classification.

In urging classification under paragraph 84, *supra*, by similitude, as "soluble or chemically treated starch," plaintiff relies on the matter of use, pointing to testimony to the effect that both the imported product and the merchandise directly provided for in said paragraph 84 are used as adhesive agents. *Advance Solvents & Chemical Corp.* v. *United States*, 16 Cust. Ct. 98, C. D. 992, is cited. That case

related to so-called "Tylose," a cellulose compound, which had been classified as such under paragraph 31 (b) (1) of the Tariff Act of 1930, and claimed to be dutiable under several different classifications, including the one for "dextrire substitutes" in paragraph 84, *supra.* The record showed a variety of uses for the merchandise but failed to establish any chief use. While the court, in the course of its decision, had occasion to refer to the scope of paragraphs 83 and 84, in discussing the claim for classification as a dextrine substitute, nothing contained therein has application to the issue of similitude presented herein.

Classification by similitude of use is not satisfied by a mere showing of general usage of two comparable products. There must be a substantial sameness in the method of use and the effect, or productive result, of the two products. *Pickhardt* v. *Merritt,* 132 U. S. 252, applied such construction in considering the matter of similitude by use as it related to imported coal-tar colors or dyes and a tariff provision for aniline dyes. Referring to both classes of articles, the Court said that "the mere application to the dyeing of fabrics would not create the similitude," but "if there was a similitude in the mode of use, a similitude in the same kind of dyeing, producing the same colors in substantially the same way, so as to take the place of aniline dyes in use, there would be a similitude in use."

Of like effect is *Murphy* v. *Arnson,* 96 U. S. 131, wherein the imported merchandise consisted of nitro-benzole, which had been assessed as an essential oil, by similitude. In rejecting such classification, the Court held that evidence tending to show the imported article "resembles essential oil in the uses to which it is put, as a marketable commodity, more than anything else" was not sufficient under the statute of similitude by use which "plainly refers to its employment, or its effect in producing results."

The same principle was followed in *Corporacion Argentina de Productores de Carnes* v. *United States,* 29 C. C. P. A. 288, C. A. D. 204. There, the merchandise consisted of dog food, which was classified as a nonenumerated manufactured article under paragraph 1558, *supra.* Claim was made for classification within the provisions for mixed feeds in paragraph 730 of the Tariff Act of 1930, by virtue of the similitude provision in paragraph 1559, *supra.* Although both the imported commodity and the articles enumerated in the law were generally used as foods, the court overruled the claim for classification by similitude in the absence of "any evidence of record that the involved dog food has substantially the same nutritive value, or that it produces substantially the same results, as any of the mixed feeds specially provided for in paragraph 730, *supra.*"

In *Pittsburgh Plate Glass Co.* v. *United States,* 2 Ct. Cust. Appls. 389, T. D. 32162, the Government raised the similitude issue on an

importation of mats of felt containing no wool, claiming that the articles were dutiable under a tariff provision for "Felts not woven, and not specially provided for in this section, composed wholly or in part of wool," paragraph 382 of the Tariff Act of 1909. The imported felts were used as a polishing agent in plate-glass manufacturing operations, and their use was substantially the same as the woven felts composed of wool that were enumerated in the law. The method of using the different felts varied, depending on the type of machinery employed. In sustaining the claim for classification by similitude of use, the Court of Customs and Patent Appeals said: "The result in each case is identical, so that it seems to us that the conclusion is inevitable that there is a similitude, though not an identity in the mode of use."

*Ringk & Co.* v. *United States*, 13 Ct. Cust. Appls. 126, T. D. 40960, discussed at length in defendant's brief, held cellophane strips not to be classifiable, by similitude, as manufactures of gelatin, the conclusion being based on a record showing material differences in the method and purpose of uses between the two comparable products.

Steer hides, processed to the extent where they were suitable for use in bag or case leather, were held to be classifiable under the provision for "bag, case * * * leather, in the rough, in the white, crust, or russet, partly finished, or finished," paragraph 1530 (a) (5) of the Tariff Act of 1930, by virtue of similitude of use. *Hartmann Trunk Co.* v. *United States*, 27 C. C. P. A. 254, C. A. D. 95.

*Mary G. Ricks* v. *United States*, 33 C. C. P. A. 1, C. A. D. 308, discusses the principle in holding so-called "barley bran," a byproduct of the malt-producing industry, not to be classifiable by similitude of use under the provisions for the byproducts and mixed feeds contemplated by paragraph 730 of the Tariff Act of 1930, as modified by the trade agreement with Canada, T. D. 49752, although both the imported merchandise and that covered by the statute were used for the same purpose, i. e., feeding cattle.

The importance of all of the cited cases lies in the emphasis given to the proposition that there must be substantial similitude before the provisions of paragraph 1559, *supra*, can be invoked. A mere superficial sameness in some element of similarity is not sufficient. The record before us is not nearly sufficient to establish for the "Gloy" C paste in question a classification of soluble or chemically treated starch, by similitude of use. First of all, the plant manager's statement that his use of chemically treated starch as an adhesive agent has been "intermittently," implies an occasional or fugitive use rather than chief use, as required for tariff classification predicated on use. *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T. D. 35472. Then, too, the testimony fails to establish the essentials of

comparable mode of use and effectiveness between the imported product and the substance directly provided for in the tariff act.

The Summary of Tariff Information of 1929, compiled by the United States Tariff Commission for use of the Committee on Ways and Means in its consideration of adjustments in the Tariff Act of 1922, lends support to the conclusion that the present merchandise is not "soluble or chemically treated starch," as contemplated by paragraph 84, *supra*. The publication (p. 404) discusses paragraph 86 of the Tariff Act of 1922, which included the provision under consideration, and in connection therewith the following is stated:

> Soluble starch is starch rendered soluble by heat and chemical treatment. It is intermediate between starch and dextrine, and is used as a sizing agent in the textile industry and in volumetric chemical analysis.

The merchandise in question is a combination of substances, each having a definite function to produce a useful adhesive, commercially recognized as "Gloy" C paste. In its imported condition, it is a finished product. Counsel for plaintiff, in his brief, very aptly states the conclusion which we adopt: "The analysis, general appearance and inferences to be drawn from the description of 'Gloy' C Paste, as found within the record, unquestionably lead to the conclusion that it is a manufactured article and is not specially provided for in the Tariff Act of 1930." Accordingly, we hold the commodity to be classifiable under paragraph 1558, *supra*, and dutiable at 20 per centum ad valorem, as claimed by plaintiff and conceded by defendant.

The protest is sustained and judgment will be rendered accordingly.