(C. D. 1366)

HOLEPROOF HOSIERY CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 23, 1951)

*Harold S. Willingham* for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before Oliver, Cole, and Mollison, Judges

Cole, ·Judge: The factual· phase of this· case, which will be embodied in discussing the issues instead of outlining the testimony of each witness, individually, is uncontradicted.

Spun nylon yarn was classified by similitude as wool yarn, other than in chief value of Angora rabbit hair, with an assessment of duty at 30 cents per pound and 20 per centum ad valorem under paragraph 1107 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and paragraph 1559 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1559). Plaintiff seeks classification under the provision for "Spun yarn of rayon or other synthetic textile," either directly under paragraph 1303 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, or by similitude, paragraph 1559, *supra*, with duty assessment at 6¼ cents per pound and 22½ per centum ad valorem. An alternative claim is made for classification as a nonenumerated manufactured article under paragraph 1558 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1558), carrying a dutiable rate of 20 per centum ad valorem.

Classification of the nylon yarn in question by similitude to wool yarn was based on the matter of use for, as stated in Government counsel's brief, "both articles are used in the production of men's hosiery. That the use is the same is obvious." Such a general usage of the two products, however, is a mere superficial sameness and is not sufficient for classification by similitude. *Roovers Bros., Inc.* v. *United States*, 23 Cust. Ct. 53, C. D. 1190.

*Pickhardt* v. *Merritt*, 132 U. S. 252,. cited with approval in the *Roovers Bros., Inc.*, case, *supra*, in discussing similitude of use between imported coal-tar colors or dyes and a tariff provision for aniline dyes, said that "if there was a similitude in the mode of use, a similitude in the same kind of dyeing, producing the same colors in substantially the same way, so as to take the place of aniline dyes in use, there would be a similitude in use," thereby supporting our position that similitude by use cannot be invoked herein.

Wool and nylon are separate and distinct commodities. Wool is a natural product derived from the hair of animals. Nylon, produced by an artificial process, is made from coal, air, and water. Distinguishing qualities between the two products were given in testimony by the comptroller of the plaintiff corporation as follows: "Wool is a good insulator; nylon has a very high thermal conductivity. As a consequence, an all nylon garment has a sort of cold, clammy feeling, as compared to a wool garment. And answering your question, I

would say wool is a more comfortable fiber." Nylon wears longer and has higher abrasive resistance. Wool yarn is approximately twice as expensive as nylon yarn of a comparable grade. The yarn in question contains no wool whatsoever; it is wholly and entirely of nylon and cannot be used as a replacement of or a substitute for wool yarn.

The present merchandise is not wool yarn by similitude. We therefore hold the collector's classification to be erroneous.

Nylon yarn, the product before us, is concededly the spun yarn of a synthetic textile and, as such, specifically meets the general provision in paragraph 1303, as amended, *supra*. No hesitancy would be experienced in holding the merchandise classifiable thereunder, if consideration, first, did not have to be directed to paragraph 1313 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1313), reading as follows:

PAR. 1313. Whenever used in this Act the terms "rayon" and "other synthetic textile" mean the product made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, which product is solidified into filaments, fibers, bands, strips, or sheets, whether such products are known as rayon, staple fiber, visca, or cellophane, or as artificial, imitation, or synthetic silk, wool, horsehair, or straw, or by any other name whatsoever.

Nylon is not made "from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing," and so defendant argues that "inasmuch as the involved merchandise was not produced from any of the sources enumerated in paragraph 1313, it cannot be classified directly under paragraph 1303." In other words, paragraph 1313, *supra*, refers directly to rayon and derivatives therefrom, and other synthetic textiles related thereto through source material, which were articles of commerce in 1930 when the tariff act was passed. Nylon became a later development and did not enter the channels of commerce until 1937 or 1938, 7 or 8 years after the explanatory language of paragraph 1313 was enacted.

To give a strict construction to paragraph 1313, thereby excluding a synthetic textile, like the nylon yarn in question, from paragraph 1303, *supra*, which would otherwise very definitely apply, is to attribute to Congress a sense of shortsightedness, and a reluctance—if not a failure—to recognize the potentialities of synthetic products with peculiar properties offering increasingly great possibilities in scientific and industrial fields. We are, of course, unwilling to assume such a position. Our attitude in this respect is supported by the use of the present tense employed in paragraph 1313, as it reads, "Whenever used in this Act the terms 'rayon' and 'other synthetic textile' *mean* [italics added] the product  *  *  *  ." It is a fair inference therefrom that Congress intended the paragraph to attach only to articles of commerce, existing at the time of enactment of the Tariff

Act of 1930, without foreclosing from tariff provisions for synthetic textiles, later accomplishments, the results of much study and research, which, like nylon yarn, supply great benefits to industry.

Support for this limitation upon paragraph 1313, *supra*, is found by reference to paragraph 1121 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1121) as it affects the scope of the word "wool." The paragraph reads:

PAR. 1121. Whenever in this title the word "wool" is used in connection with a manufactured article of which it is a component material, it *shall be held* to include wool or hair of the sheep, camel, Angora goat, Cashmere goat, alpaca, or other like animals, whether manufactured by the woolen, worsted, felt, or any other process. [Italics added.]

Use of the italicized verb connotes the recognition of the future, when newly developed products would become available and the extended meaning of "wool" would remain effective. The same can be said of the statutory definition of "drug," paragraph 34 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 34), which states that the term *"shall include* [italics added] only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes."

To give effect to the reasoning followed herein, requires application of the well-known rule that statutes are made for the future. Clear expression of the principle is found in *United States* v. *Charles R. Allen, Inc., et al.*, 37 C. C. P. A. 110, C. A. D. 428, wherein the court, speaking through Johnson, J., said:

* * * The rule as established by cases cited by the Customs Court is more fully to the effect that tariff laws being made for the future, merchandise which was not known at the date of the passage of the tariff act, would when subsequently moving in commerce come under the paragraph which fairly and clearly includes them, it being understood that in interpreting customs statutes, commercial terms are to be construed in accordance with their commercial understanding. The requirement was that the later originating products be commercially known by the tariff designation.

The rule is applied in this case to effectuate a congressional intent, having proper application herein, to convey to industry the advantages and benefits accruing through the introduction into commerce of such a valuable substance as nylon yarn. The present merchandise is "fairly and clearly" included within the provision for "Spun yarn of * * * other synthetic textile" in paragraph 1303, as amended, *supra*, and we therefore hold it to be classifiable thereunder, dutiable at 6¼ cents per pound and 22½ per centum ad valorem, as claimed by plaintiff.

The conclusion makes it unnecessary to consider plaintiff's other claims, for neither classification by similitude, paragraph 1559, *supra*, nor the provision for nonenumerated manufactured articles, paragraph

1558, *supra*, can be invoked,where, as here, merchandise is found to be directly provided for. *American Import Co.* v. *United States*, 20 Cust. Ct. 128, C. D. 1095; *Mason* v. *Robertson*, 139 U. S. 624.

The case was heard and submitted at Savannah, Ga., before a single member of this court on circuit, under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254). My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case somewhat similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my position in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am preparing this opinion and participating in the judgment attached thereto.

The protests are sustained and judgment will be rendered accordingly.