SEATTLE MARINE & FISHING SUPPLY CO., ROBERT E. LANDWEER & CO., INC. *v.* UNITED STATES (No. 4920) [1]

---

[1] C. A. D. 679.

United States Court of Customs and Patent Appeals, March 14, 1958

*Lawrence & Tuttle* for appellants.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel), for the United States.

[Oral argument December 4, 1957, by Mr. FitzGibbon; submitted on brief by appellants]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

RICH, Judge, delivered the opinion of the court:

This is an appeal by the importer from a judgment of the United States Customs Court, First Division, C. D. 1857, overruling the protest against the assessment of duty on vinyl plastic floats imported from Canada for use with fishing nets.

The merchandise was classified as manufactures of cork, not specially provided for, under paragraph 1511, Tariff Act of 1930, by virtue of the similitude clause in paragraph 1559, dutiable at the rate of 45 per cent ad valorem. The element of similarity relied upon was that of use.

The protest claimed that the merchandise was properly classifiable as nonenumerated manufactures under paragraph 1558, dutiable at the rate of 10 per cent ad valorem.

The statutes involved are:

Paragraph 1511, Tariff Act of 1930:

Cork bark, * * * manufactures wholly or in chief value of cork bark or cork, not specially provided for, 45 per centum ad valorem.

Paragraph 1559, Tariff Act of 1930:

That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned * * *.

Paragraph 1558, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739:

That there shall be levied, collected, and paid on the importation of * * * all articles manufactured, in whole or in part, not specially provided for, a duty of 10 per centum ad valorem.

The lower court sustained the collector's classification stating, "We are * * * of the opinion that, on the record made, plaintiffs have failed to establish a lack of substantial similitude of use between cork and plastic floats," apparently sustaining the collector's classification on the ground that appellants had not met their burden of proof.

Appellants contend:

1) That a substantial similitude of use does not exist where the new product has certain special features not found in the enumerated article, and the lack of those features in the enumerated article renders it totally unfit for substitution in place of the new article in the use to which the new article is chiefly put.

2) That plaintiffs below made out a prima facie case by the use of one witness, and that the quantum of proof adduced herein was sufficient to shift the burden of going forward with the evidence to the defendant, which burden the defendant failed to carry, thus entitling plaintiffs to judgment sustaining their protest claim.

The Government contends:

* * * that the sole use of a cork float such as Exhibit 4 is to support a fish-net of one kind or another in the water; the same may be said of the imported plastic floats, and the similitude provision is applicable. The fact that plastic floats resist pressure whereas cork floats tend to break under strain is not controlling here, for that involves a question of quality, texture, or material, none of which are at issue. Nor is the fact that one float may be used under different conditions than the other controlling.

Two witnesses were called. One, Deputy Collector Ogden, testified that the only element of resemblance relied upon for application of the similitude clause was the resemblance in respect to use. The other was a dealer in marine and fishing supplies who testified that the vinyl floats were used mostly on purse-seine nets though some were used on gill-net. The witness described the operation of purse-seine net fishing to be substantially as follows (quoting from appellants' brief):

* * * It is a long wall of net, approximately 1800 feet long, which is let off the stern of the fishing vessel to surround a school of fish. The wall extends many feet down into the water, and at the bottom are eyelets, as on a tobacco pouch, through which a purse line is drawn. When the purse line is pulled in, it closes the bottom of the net, forming a bag or cone 1800 feet in circumference at the top and extending down many feet into the water and drawn together at the bottom. When the fish are so enclosed, one end of the net is drawn onto the fishing boat and the process continues until the fish are confined to a narrow space alongside the boat. They are then dipped out by means of a brail.

Until approximately 1952, the nets were pulled in by hand and cork floats were used to support the upper edge of the net while it lay in the water. Then fishermen began employing a mechanical drum or reel to haul in the net, and at the same time they began to employ plastic floats similar to those involved herein. * * *

The mechanical reel exerts great pressure on the net and the floats, due to the curvature of the reel and the heavy weight against which it is pulling. Cork floats would break under such pressure, along the lines of cracks which exist in

all cork floats. To the extent they have been used with mechanical reels, due to fishermen having a supply of them on hand, this constant breakage did in fact occur. * * *

*     *     *     *     *     *     *

* * * Cork floats are still used in purse-seine fishing by those who use the old style of overhauling the net by hand, but the numbers of such users are rapidly dwindling, due to the greater efficiency of the mechanical reel. * * *

A somewhat similar story of mechanization was told of the gill-net fishing, a different type of fishing with which the witness was also familiar. However, only about 10 percent of the plastic floats were sold by the witness for use in gill netting, while 90 percent were sold for use in purse-seine fishing. The original float used in gill netting is the cedar float. The witness has almost never seen cork floats used in gill netting. * * *

Appellants have cited numerous cases dealing with the similitude clause which we feel do not support their case or situation.

*Isler & Guye et al.* v. *United States*, 5 Ct. Cust. Appls. 229, T. D. 34401, says "effect in producing results" is a factor in determining the issue of similitude. If anything, this case is contrary to appellants' contentions since both cork and vinyl floats support the fishing net in precisely the same way, and the fact that one may be more economical or preferable because less perishable does not negate similarity.

*Pickhardt* v. *Merritt*, 132 U. S. 252, is plainly inapplicable on its facts. The case deals with aniline dyes vs. other dyes, the court holding that use in the dyeing of fabrics is not alone sufficient similarity, but that "mode of use * * *, the same kind of dyeing, producing the same colors in substantially the same way * * * there would be a similitude in use." This case does not help appellants since cork and vinyl floats have the same "mode of use * * * in *substantially* the same way." (Emphasis ours). Fifteen to twenty per cent damage to cork in some uses as compared to vinyl floats which are not damaged means that 80 to 85 per cent of the cork floats are effective, which is surely "substantially" the same effect in use.

*United States* v. *Godillot & Co.*, 3 Ct. Cust. Appls. 128, T. D. 32382, dealt with small stearin "night lights" vs. tapers. The court stated that the mere fact both gave light was not sufficient similarity. In the instant case, not only do both cork and vinyl floats float a net, but both are used or have been used in purse-seine fishing. The fact one is preferable does not constitute dissimilarity in use. *J. M. P. R. Trading Corp., Alltransport, Inc.* v. *United States*, 43 C. C. P. A. (Customs) 1, C. A. D. 600.

*Roovers Bros. Inc.* v. *United States*, 23 Cust. Ct. 53, C. D. 1190; *Holeproof Hosiery Co.* v. *United States*, 27 Cust. Ct. 176, C. D. 1366, and other Customs Court cases, have been considered but are deemed not controlling.

In *Maher-App & Company* v. *United States*, 44 C. C. P. A. (Customs) 22, C. A. D. 630, we specifically found no similitude because of

the principle of law involved, viz: words of limitation or exclusion used in a tariff provision must be applied to articles sought to be classified by similitude in a particular paragraph. In that case, it was held that plastic false teeth did not "when broken [show] 'a vitrified or vitreous, or semivitrified or semivitrious fracture'," as did porcelain teeth and were thus excluded from the involved paragraph. No such words of limitation are found in the involved paragraphs of the tariff act.

*Ringk & Co.* v. *United States*, 13 Ct. Cust. Appls. 126, T. D. 40960, involved strips of cellophane which were sought to be classified by similitude to manufactures of gelatin. All four factors of similarity were discussed and dismissed viz: gelatin was not manufactured into strips or wound on rolls; even if gelatin were made in strips they could not be used for making braids, knitted goods, and woven goods; the qualities of gelatin precluded its use in the involved uses of cellophane. Appellant suggests that "it would be rash indeed to suggest that the genius of industry could not devise means for overcoming all of these obstacles." This argument is without merit and the case is not applicable to the instant situation.

*United States* v. *B. R. Anderson & Co. and Geo. S. Bush & Co.*, 17 C. C. P. A. (Customs) 393, T. D. 43833, dealt with cotton wipers as opposed to cotton thread waste. The evidence was that the cotton thread waste could not be used on certain machines because the threads would clog the machines, and there were certain places that the wipers could not be used for equally valid reasons, although in some places both were used. The case comes closest to the instant situation but is inapplicable because there is no question as to inability to catch fish or float nets or, for that matter to mechanically reel in the net and floats. While it is true the cork floats tend to break, the fact remains they still serve the purpose and are not as widely used now for economic reasons. There is no indication that the cork will not work.

*Nevin* v. *United States*, 5 Ct. Cust. Appls. 423, T. D. 34945, dealt with viscose bottle caps vs. metal bottle caps. The court there held that one did not carry out the functions of the other in that the metal cap did not hermetically seal the contents of bottles and tubes, rather, it held a piece of cork in place which did the sealing. No such situation is present here, both floats float the nets.

There are other cases cited dealing with burden of proof which we consider unnecessary to discuss since we are of the opinion there is no *prima facie* case which the government would be required to overcome.

We rest our decision primarily upon two cases, one decided by this court, and one by its predecessor. The first is *Pittsburgh Plate Glass Co.* v. *United States*, 2 Ct. Cust. Appls. 389, T. D. 32162, wherein

types of polishing felt were involved. It would appear that a machine was invented to polish glass, which machine used a type of polishing felt which was of different composition than the felts which had been previously used to hand polish the same type of glass. The court stated:

* * * As a part of these machines as a polishing agency it has been made practical to use a less expensive polishing apparatus, to wit, the imported felts, mats, or whatever the imported articles may be styled. It appears from the uncontradicted testimony in the record that the method of using each of the articles is somewhat different, incident to the difference in the machinery employed, but they are used substantially in the same manner. * * * The result in each case is identical, so that it seems to us that the conclusion is inevitable that there is a similitude, though not an identity in the mode of use.

We believe a parallel situation is presented here.

Appellant also urges that since the record indicates an exclusive use of vinyl floats in purse-seine net fishing, there is no similitude of use. We do not agree that the record indicates an exclusive use of vinyl. At best it shows that there is a 15 to 20% breakage incident in the use of cork when mechanical reeling is used which is causing a switch to vinyl floats, and even if the switch is to exclusive use of vinyl floats, the *Pittsburgh Plate Glass Co.* case, *supra*, indicates this to be of no consequence.

The second case we find particularly applicable is the *J. M. P. R. Trading Co.* case, *supra*. That case dealt with nylon monofilament fishing line as opposed to silk. The nylon line was classified by virtue of the similitude clause with manufactures of silk, under paragraph 1211. This court, after examining the record, was of the opinion that the testimony indicated nylon was used instead of silk as a matter of preference. The instant record also indicates the change from cork to vinyl floats to be a matter of preference, a monetary one, since the latter are more economical. But we can hardly hold that the articles are dissimilar because one composition is less expensive and more economical than the other and is thus replacing a formerly used composition. In the *Pittsburgh Plate Glass* case, *supra*, the court noted that the new composition of felt was much more economical and had, as yet, not been successfully manufactured in the United States. Its decision levied a rate of duty of 400% upon the imported article. But despite this fact, the court felt constrained to follow the well established rules of construction and to hold the articles similar in mode of use. We must reach the same conclusion here.

The decision of the lower court is therefore *affirmed*.

JACKSON, J., Retired, recalled to participate, was present at the hearing of this appeal but did not participate in the decision.